Robert A. Rich
HUNTON & WILLIAMS LLP
200 Park Avenue
New York, New York 10166
(212) 309-1000
Fax (212) 309-1875

-and-

Robert M. Tata (VSB No. 30101)
*Admitted Pro Hac Vice*
Wendy C. McGraw (VSB No. 37880)
*Admitted Pro Hac Vice*
HUNTON & WILLIAMS LLP
500 E. Main Street, Suite 1000
P.O. Box 3889
Norfolk, Virginia 23514-3889
(757) 640-5300
Fax (757) 625-7720

*Attorneys for Plaintiff*
*Dell's Maraschino Cherries Co., Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------- X
**DELL'S MARASCHINO CHERRIES CO., INC.**              :
                                                     :
                    Plaintiff,                       :
                                                     :
             -against-                               :     **CIV. NO. 1:10-CV-03789 (ILG)(RER)**
                                                     :
**SHORELINE FRUIT GROWERS, INC., ET AL.**            :
                                                     :
                    Defendants.                      :
--------------------------------------------------- X


**MEMORANDUM IN SUPPORT OF DELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

<u>TABLE OF CONTENTS</u>

Page(s)

I.      Preliminary Statement ...................................................................................... 1

II.     Statement of Facts .......................................................................................... 1

III.    Argument ......................................................................................................... 4

        A.    SFG Breached The Contract .............................................................. 4

        B.    SFG Had No Right To Cancel The Contract Based On Dell's Alleged
              Breach Of The Parties' Agreement. .................................................. 5

              1.    Dell's Did Not Breach The Contract ....................................... 5

                    a.    Alleged breach concerning bins ................................. 8

                    b.    Alleged breach based on failure to order ten loads per
                          month ........................................................................... 9

                    c.    Alleged breach based on payments made after 30 days and
                          exceeding credit limit ................................................. 10

                    d.    Alleged breach based on price reduction and exiting
                          previous year's purchase order ................................... 12

                    e.    Alleged breach based on freight deduction ................. 12

                    f.    Alleged statement by Dell's that it would not purchase full
                          balance of loads .......................................................... 13

              2.    Even If Dell's Breached The Contract, SFG Had No Right To
                    Cancel The Remaining Deliveries. .......................................... 14

        C.    SFG's Defense of Commercial Impracticality Fails As A Matter of Law .......... 16

        D.    SFG's Conduct Violates PACA ........................................................ 17

        E.    SFG's  Counterclaims Against Dell's Fail As A Matter of Law. ........ 18

IV.    Conclusion ....................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Computer Strategies, Inc. v. Commodore Business Machines, Inc.,
105 A.D.2d 167 (2nd Dep't 1984).............................................................. 7

Emanuel Law Outlines, Inc. v. Multi-State Legal Studies, Inc.,
899 F. Supp. 1081 (S.D.N.Y. 1995) .......................................................... 16

ESPN, Inc. v. Office of the Commissioner of Baseball,
76 F. Supp. 2d 383 (S.D.N.Y.) ................................................................... 7

Henrich v. Phazar Antenna Corp.,
33 A.D.3d 864 (2nd Dep't 2006)................................................................ 6

Ho Myung Moolsan Co., Ltd v. Manitou Mineral Water, Inc.,
2010 WL 4892646 (December 2, 2010 2nd Cir.) ...................................... 15

Hubbard v. UTZ Quality Foods, Inc.,
903 F. Supp. 444 (W.D.N.Y. 1995).......................................................... 15

Hudson Feather & Down Products, Inc. v. Lancer Clothing Corp.,
128 A.D.2d 674 (N.Y. App. Div. 1987) .................................................... 16

Hunt, Ltd. v. Lifschultz Fast Freight, Inc.,
889 F.2d 1274 (2nd Cir 1989) ................................................................... 6

Law Debenture Trust Co. v. Maverick Tube Corp.,
595 F.3d 458 (2nd Cir. 2010) .................................................................... 6

Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,
102 F.3d 660 (2nd Cir. 1996) .................................................................... 6

Petroleo Brasileiro S.A., Petrobras v. The IBE Group, Inc.,
1995 WL 326502 (May 31, 1995 S.D.N.Y.)............................................. 15

Quantum Chem. Corp. v. Reliance Group, Inc.,
180 A.D.2d 548 (1st Dep't 1992).............................................................. 6

SOS Oil Corp. v. Norstar Bank of Long Island,
76 N.Y.2d 561 (1990) ................................................................................ 6

Trans World Metals, Inc. v. Southwire Co.,
769 F.2d 902 (2nd Cir. 1985) ................................................................... 16

**Page(s)**

<u>Vermont Teddy Bear Co. v. 538 Madison Realty Co.</u>,
    1 N.Y.3d 470 (2004) ................................................................................ 6

<u>Ward v. National Geographic Society</u>,
    284 Fed. Appx. 822 ................................................................................ 6

**STATUTES**

7 U.S.C. § 499b(2) ...................................................................................... 17

7 U.S.C. § 499e(2) ...................................................................................... 20

N.Y.U.C.C. § 2-208 .................................................................................. 7, 8

N.Y.U.C.C. § 2-209(1) ................................................................................. 7

N.Y.U.C.C. § 2-609 ................................................................................... 14

N.Y.U.C.C. § 2-612 ............................................................................... 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 .................................................................................. 1, 21

Local Rule 56.1 ........................................................................................... 1

## I.     PRELIMINARY STATEMENT

Plaintiff Dell's Maraschino Cherries Co., Inc. ("Plaintiff" or "Dell's") entered into a written contract with Defendant Shoreline Fruit Growers, Inc. ("SFG"), pursuant to which SFG agreed to sell Dell's one hundred truck loads of cherries at 49 cents per pound (the "Contract"). A copy of the Contract is attached as Exhibit A to the Declaration of Arthur Mondella. During the term of the Contract, the price of cherries rose. Rather than sell the cherries to Dell's, SFG sold the cherries to third parties at a higher price. SFG breached the contract, plain and simple, and Dell's is entitled to summary judgment on liability.

SFG hopes to avoid summary judgment by muddying the waters with allegations of breach against Dell's. But, none of these alleged "breaches" are sufficient to excuse SFG from performing the Contract. SFG had cherries in inventory and refused to deliver them to Dell's in accordance with the Contract. There are disputed issues concerning Dell's damages, but liability is clear. The Court should enter summary judgment in favor of Dell's and streamline this case for trial. Specifically, Dell's seeks the following: (1) summary judgment on liability with respect to Dell's claims for breach of contract and violation of the Perishable Agricultural Commodities Act ("PACA"); (2) summary judgment on SFG's defense of "commercial impracticality;" and (3) summary judgment on SFG's counterclaims.

## II.     STATEMENT OF FACTS

In accordance with Fed. R. Civ. P. 56 and Local Rule 56.1, Dell's has filed a separate Statement of Material Facts Not in Dispute ("SOF") in support of its Motion for Partial Summary. The SOF is incorporated by reference herein. Rather than repeat the entire SOF, Dell's provides this brief overview.

Dell's sells finished maraschino cherries to retail and wholesale customers, including Steak & Shake and Aldi's. Declaration of Arthur Mondella ("Mondella Decl."). at 3. Arthur

Mondella is the President of Dell's.  Id. at 2.  Dell's purchases brine cherries from various suppliers in order to produce its maraschino cherries.  Id. at 4.

SFG sells brine cherries to various customers, including Dell's.  Deposition of Robert Reidy — Individual and Corporate Representative of SFG (11/10/11) ("SFG/RR Dep.") at 12:14-12:18;[1] Mondella Decl. at 4.  SFG is licensed as a dealer under the Perishable Agricultural Commodities Act ("PACA").  Answer to Second Amended Complaint and Counterclaim (Docket No. 54) at ¶ 23.  Dean Veliquette holds himself out as the "brine manager" of SFG.  Deposition of Dean Veliquette - Individual and as Corporate Representative of SFG (May 3-4, 2011) ("SFG/DV Dep.) at 15:24-16:9.

The cherries that SFG sells are processed and packed for delivery by Defendant Great Lakes Packing, Co. ("GLPC"), at GLPC's plant in Kewadin, Michigan.  Deposition of Great Lakes Packing ("GLPC Dep.") at 10:16-12:6; Deposition of Joanna Hicks ("Hicks Dep.") at 24:15-24:25.[2]

On July 13, 2009, Dell's entered into a written contract with SFG to purchase one hundred truck loads of Michigan Brine Cherries (regulars) at 49 cents per pound, FOB Kewadin, Michigan (the "Contract").  Mondella Decl. at 5 and Ex. A; SFG/DV Dep. at 12:23-14:5 and Dep. Ex. 3.  The Contract was drafted by Dean Veliquette.  SFG/DV Dep. at 59:10-59:13.

In or around May 2010, SFG started restricting Dell's purchase of cherries under the Contract.  Mondella Decl. at 11-13.  Arthur Mondella, on behalf of Dell's, contacted SFG and orally demanded that SFG honor the contract for 100 loads, and then followed up with a written

---

[1]  Reidy is the secretary and treasurer of SFG.  He oversees the accounting and financial matters of the company. SFG/RR Dep. at 12:19-12:20, 14:21-14:25.  He was produced to testify regarding a variety of topics, including SFG's various allegations of breach against Dell's and SFG's counterclaim.  SFG/RR Dep. at 10:8-10:20 and Dep. Ex. 1.

[2]  Hicks is an employee of Great Lakes Packing.  Hicks Dep. at 10:19-10:23.

demand on June 25, 2010.  SFG/DV Dep. at 88:2-88:9; GLPC Dep. at  55:15-56:24; Hicks Dep. at 58:13-59:12 and Dep. Ex. 10; Mondella Decl. at 12 and Ex. D.  Despite these demands, SFG refused to fulfill the Contract and provide Dell's with the full 100 loads specified.  Mondella Decl. at 13;[3] Deposition of Dean Veliquette (11/11/11) ("Veliquette Dep.") at 91:5-91:8 (it is "correct" that SFG didn't deliver 100 containers to Dell's).  See also GLPC Dep. at 77:9-77:14 (acknowledging that "40 or 50 truckload[s] of cherries that were due to be delivered under the contract were not released for delivery"); SFG Responses to Dell's First Requests for Admissions, Response No. 4 (admits SFG "did not deliver 100 truckloads of Cherries to Plaintiff" during referenced time period).

The Contract price of 49 cents per pound was a record low price for cherries.  SFG/DV 19:4-20:21.  Over the course of the Contract, the price of cherries rose.  SFG/RR Dep. at 31:24-32:6 (by June 2010, SFG was able to sell cherries to others at higher price).  During the time period of July 2010 to October 2010, SFG sold cherries to third parties at a price higher than 49 cents per pound, and these cherries could have been used to satisfy the Dell's Contract.  Id; SFG/RR Dep. at 32:11-34:8; SFG/DV Dep. at 64:7-64:13; GLPC Dep. at 200:8-220:6 (reviewing spreadsheet showing sales to third parties at a higher price during relevant time period); see also SFG's Response to Dell's Second Requests for Admissions, Response Nos. 6-13.  SFG had cherries inventory to satisfy the Dell's Contract, but chose not to do so.  GLPC Dep. at 58:17-59:17; SFG/DV Dep. at 113:18-114:9 (had cherries in warehouse to fulfill the Contract), 435:10-435:21 ("the availability of fruit was never the issue"), and 443:20-444:16.

---

[3]  The parties dispute the exact number of loads that were delivered under the Contract; thus, Dell's does not seek summary judgment on damages.

Outside of the context of this litigation, Dean Veliquette told a group of Michigan cherry growers that he did not honor the Contract with Dell's because he wanted to get a better price for the cherries.  Video Deposition of Raymond Fouch ("Fouch Dep.") at 23:2-24:19, 38:9-38:23. As one the growers testified in his deposition:

> . . . And so Dean proceeded to explain to us that they were, in fact, involved in a lawsuit with brine cherries.  That they have chosen –
> – at one point they had chosen not to honor the contract they had with a firm in New York.  And that we — we pursued that.  I remember asking, "Well, why is that?"  And he said, "We want to support grower prices."

Id. at 23:22-24:3.

SFG's position in this litigation is that it had the right to cancel the Contact because Dell's breached the agreement.  See Answer to Second Amended Complaint and Counterclaim (Docket No. 54).  The first time SFG even suggested a breach by Dell's was July 21, 2010 — a month after Dell's written request for the balance of the cherries owed to it under the Contract. Mondella Decl. at 15.

### III.  ARGUMENT

It is undisputed that SFG did not deliver one hundred truck loads of cherries to Dell's at 49 cents per pound and instead sold the cherries to others at higher prices.  SFG's litany of "afterthought" breaches are not material or legally relevant.  Summary judgment should issue to Dell's on the contract and related PACA claims simplifying this case for trial or settlement between the parties.

### A.  SFG Breached The Contract.

The Contract required SFG to supply Dell's with one hundred truck loads of cherries at 49 cents per pound.  Mondella Decl. at Ex. A.  SFG did not supply the full 100 loads to Dell's. Mondella Decl. at 9; Veliquette Dep. at 91:5-91:8 (it is "correct" that SFG didn't deliver 100

containers to Dell's).[4]  There is no dispute about this. The only issue for purposes of this Motion for Partial Summary Judgment is whether SFG had a right to cancel the Contract or was otherwise justified in refusing to perform.  As discussed below, SFG had no basis to refuse to fulfill the balance of the Contract, and the Court should enter summary judgment in favor of Dell's on liability with respect to Dell's claims for breach of contract and violation of PACA.

**B.  SFG Had No Right To Cancel The Contract Based On Dell's Alleged Breach Of The Parties' Agreement.**

SFG contends that Dell's was the first to breach; and therefore, it was entitled to cancel the remainder of the Contract.  <u>See</u> SFG Answer to Second Amended Complaint and Counterclaim (Docket No. 54).  This argument fails because, among other reasons, Dell's complied with the terms of the Contract as written by SFG, the parties modified the Contract by their conduct and Dell's complied with the modified Contract, and/or SFG waived strict compliance with the Contract terms at issue.  Moreover, even if Dell's breached the Contract with respect to any individual installment, such breach was not sufficient for SFG to cancel the remaining deliveries.  Thus, the Court should enter summary judgment on liability in favor of Dell's on its claim for breach of contract.

**1.  Dell's Did Not Breach The Contract**

SFG has that Dell's breached the Contract in several respects.  SFG's allegations of breach, however, are not supported by the plain language of the Contract or the parties' course of performance.

---

[4]  <u>See</u> <u>also</u> GLPC Dep. at 77:9-77:14 (acknowledging that "40 or 50 truckload[s] of cherries that were due to be delivered under the contract were not released for delivery"); SFG Responses to Dell's First Requests for Admissions, Response No. 4 (admits SFG "did not deliver 100 truckloads of Cherries to Plaintiff" during referenced time period).

Under New York law, "there is a presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties." Quantum Chem. Corp. v. Reliance Group, Inc., 180 A.D.2d 548, 549 (1st Dep't 1992). Accordingly, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Henrich v. Phazar Antenna Corp., 33 A.D.3d 864, 867 (2nd Dep't 2006) (citations omitted). A court cannot add or delete a term, nor can the court "distort the meaning of [the words] used" to create a contract different from what the parties agreed. Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004).

A contract is ambiguous only if "the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 466 (2nd Cir. 2010) (citations omitted). A contract is not ambiguous merely because the parties offer differing interpretations of its terms. Hunt, Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2nd Cir 1989). If a contract is ambiguous, it must be construed against the drafter. Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 663 (2nd Cir. 1996); SOS Oil Corp. v. Norstar Bank of Long Island, 76 N.Y.2d 561, 568 (1990).

The parties' course of dealing plays an important role in contract interpretation. In order to consider evidence of the parties' course of performance, the court need not find that the contract is ambiguous. Ward v. National Geographic Society, 284 Fed. Appx. 822, 823 (quoting Restatement (Second) of Contracts, § 223 (1981)). The Uniform Commercial Code, as adopted in New York, provides:

> Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

N.Y.U.C.C. § 2-208(1).  The Official Comments further state: "The parties themselves know best what they have meant by their words of agreement and their action under that agreement is the best indication of what that meaning was."  Official Comment 1.

Where a course of performance is inconsistent with the language of the contract, the course of performance is relevant to demonstrate waiver or modification of a contract term. N.Y.U.C.C. § 2-208(3).  Under the Uniform Commercial Code, a contractual modification need not be supported by consideration.  N.Y.U.C.C. § 2-209(1) ("An agreement modifying a contract within this Article needs no consideration to be binding").  Moreover, even where conduct does not support a modification, it may demonstrate a waiver of a contract term.[5]  Once a contract term has been waived, a party may retract the waiver **only** by giving notice to the other party that strict performance will be required of the term waived, so that the other party may cure any defect in its performance.  Id. at 2-209(5).  Absent such notice, the party cannot claim a breach of the waived term or refuse to perform the contract based on the other party's failure to comply with the term that was previously waived.  See, e.g., Computer Strategies, Inc. v. Commodore Business Machines, Inc., 105 A.D.2d 167, 175 (2nd Dep't 1984); ESPN, Inc. v. Office of the Commissioner of Baseball, 76 F. Supp. 2d 383, 389 n.4 (S.D.N.Y.) ("previously waived

---

[5]   The Official Comments to Section 2-208 state: "Where it is difficult to determine whether a particular act merely sheds light on the meaning of the agreement or represents a waiver of a term of the agreement, the preference is in favor of "waiver" whenever such construction, plus the application of the provisions on the reinstatement of rights waived (see § 2-209), is needed to preserve the flexible character of commercial contracts and to prevent surprise or other hardship.  Official Comment 3.

provision may be restored by a reasonable notice demanding performance and stating that the contract will be rescinded if the notice is not complied with") (non-UCC case) (citation omitted). These rules are designed "to preserve the flexible character of commercial contracts and to prevent surprise or other hardship."  N.Y.U.C.C. § 2-208, Official Comment 3.

When these principles are applied to SFG's allegations of breach, each of SFG's claims fail as a matter of law.  The Court should therefore find that SFG had no right to cancel the Contract, and should enter summary judgment on liability in favor of Dell's on its claim for breach of contract.  Each of SFG's allegations are discussed below.

### a.   <u>Alleged breach concerning bins</u>

SFG contends that it was entitled to cancel the Contract because Dell's did not supply bins for every cherry that was shipped.  SFG's position lacks merit.

First, the express terms of the Contract did not require Dell's to supply <u>all</u> of the bins. The Contract merely states that seller will "start using buyer's bins" when processing starts back. Mondella Decl. Ex. A.  It doesn't say seller will exclusively use buyer's bins.  Mondella Decl. at 17.

Second, even if the Contract could be read to require use of only Dell's bins, the parties modified that provision by their conduct and course of performance.  Throughout the Contract, the parties used both SFG and Dell's bins, which is standard practice in the industry.  SFG/RR Dep. at 52:13-16; Mondella Decl. at 18; <u>see also</u> GLPC Dep. at 15:20-16:16 (generally, GLPC uses both SFG totes and totes of the customer); Hicks Dep. at 81:16-82:9 (over course of year, generally use both SFG and customer bins).[6]   The parties' course of performance is either

---

[6]  Indeed, according to GLPC, the entity responsible for packing the loads, whether the container was Dell's or SFG's was not material.  GLPC Dep. at 73:14-76:4 (agreeing that GLPC "would never not fill a load because [it] didn't have enough of one kind of containers"); <u>see also</u> Mondella Decl. at 18.

evidence of what they understood the agreement to require (a mix of bins), or evidence of a modification.  Either way, SFG's allegations of breach fail.

Third, even if the Contract required use of only Dell's bins, SFG plainly waived that requirement when it repeatedly shipped product in its own bins.  After waiving the requirement that Dell's supply bins, SFG cannot rely on it to justify its cancellation of the Contract.  In order to cancel the Contract based on the failure to supply bins, SFG would, at a minimum, have to provide Dell's with notice that strict compliance would be required, and that if Dell's did not provide bins, the Contract would be cancelled.  Here, SFG did not advise Dell's that it was in breach of the agreement for failure to supply bins until at least July 21, 2010.  SFG/RR Dep. at 50:13-51:9; 52:17-52:21 (no claim of breach made); SFG/DV at 132:9-135:10 (stating that no breach was alleged until suit was filed); Mondella Decl. at 19.  And, when SFG demanded that Dell's provide bins before it would ship any cherries, Dell's complied with this demand. Mondella Decl. at 20; SFG/RR Dep. at 59:19-60:15.  Thus, SFG cannot, as a matter of law, cancel the Contract based on Dell's alleged failure to supply bins.

### b.    Alleged breach based on failure to order ten loads per month

SFG contends that Dell's breached the Contract because it did not order or take ten loads each month of the Contract.  This alleged breach also lacks merit.[7]

The Contract did not require Dell's to take ten loads each month.  The Contract merely states "Shipment of 10/loads per month **average**."  Mondella Decl. Ex. A (emphasis added). Indeed, Dean Veliquette, SFG's brine manager and corporate representative, admitted that the

---

[7]    SFG's corporate representative testified that he <u>mistakenly</u> thought that he had prepared a provision requiring ten loads a month maximum, but admits he did not do so. SFG/DV Dep. at 38:17-40:8.

number of loads ordered per month could fluctuate and that there was no set ten load requirement or maximum.  SFG/DV Dep. at 427:11-428:18; Mondella Decl. at 23.

Even assuming the Contract required Dell's to order ten loads per month (which it didn't), the parties clearly modified this provision through their conduct and/or SFG waived strict compliance.  From the outset of the Contract, Dell's did not order ten loads a month. SFG/RR Dep. at 53:17-53:19 (ordered less than 10 loads a month from the outset); Mondella Decl. at 22.  SFG never accused Dell's of breach and didn't refuse to ship product unless Dell's took ten loads each month.  SFG/RR Dep. at 53:20-54:15 (no claim of breach); SFG/DV at 129:16-130:2 (same).[8]  Rather, month after month, Dell's ordered more or less than ten loads, and SFG delivered the product <u>until</u> the price of cherries rose and made it to SFG's advantage to refuse to deliver.  SFG made a strategic decision to breach the contract to profiteer from higher prices.  But, the law is clear that a strategic breach is still a breach, and the Court should enter summary judgment in favor of Dell's on liability.

<b>c.   Alleged breach based on payments made after 30 days<br>and exceeding credit limit</b>

SFG also contends that it was entitled to cancel the Contract because Dell's paid after 30 days and/or exceeded its credit limit.  These alleged breaches, however, do not support SFG's refusal to deliver 100 loads of cherries to Dell's under the Contract.

The Contract included 30 day payment terms and a credit limit of $130,000.  Mondella Decl. Ex. A.  The parties' course of performance, however, both <u>before</u> and <u>during</u> the Contract, demonstrate beyond dispute that these were not terms that were strictly enforced.

---

[8]  <u>See also</u> SFG/RR Dep. at 105:11-105:15 (SFG never told Dell's that if it didn't pick up product, it would cancel the Contract); Hicks Dep. at 128:7-129:12 (never advised Dell's or Dean Veliquette that product left at GLPC was a breach or creating any problem).

The undisputed facts demonstrate that SFG allowed Dell's to pay after 30 days as a matter of course.  Dell's payment history under the Contract was consistent with its past practices with SFG under the same payment terms.  Mondella Decl. at 31.  Indeed, a document provided by SFG shows that from January 2009-July 2009 (spot orders prior to the Contract), Dell's paid between 34-47 days after the invoice without any complaint from SFG.  Deposition of Veliquette Dep. at 248:18-250:8 and Dep. Ex. 9.[9]  SFG's CFO (and corporate representative witness) testified that he did not raise any concerns about Dell's account prior to August 2010, and that he would not be concerned about a payment from Dell's unless it was more than 60 days overdue.  SFG/RR Dep. at 68:7-71:17.  Moreover, SFG never informed Dell's that it was in breach of the Contract for paying after 30 days.  SFG/RR Dep. at 73:5-73:9.  And, anytime that SFG requested that Dell's make a payment on its account, Dell's complied.  SFG/RR Dep. at 72:18-73:3; Mondella Decl. at 32. Under these circumstances, SFG had no right to cancel the Contract based on "untimely" payments.

SFG's allegations regarding breach for exceeding the $130,000 credit limit similarly fail.  Again, a document provided by SFG shows that at various times (including before the Contract took effect), Dell's balance with SFG was greater than $130,000.  This, however, did not result in SFG refusing to ship product to Dell's, accusing Dell's of breach, or demanding immediate payment.  SFG/DV Dep. at 136:21-136:25, 140:14-141:18.  Indeed, Dean Veliquette testified that even before the first load was shipped under the Contract, Dell's balance was $161,493 — more than $30,000 over the credit limit — and SFG didn't demand payment or refuse to ship.

---

[9]  Several of SFG's major customers do not pay within 30 days, and SFG likewise does not require strict compliance.  SFG/RR Dep. at 70:11-70:14; Response of SFG to Dell's Supplemental Requests for Admissions and Requests for Production dated November 23, 2011, at RFA Response Nos. 7, 9-10, 13-18 and RFP Response Nos. 27, 29, 31, 33, 35 (no written notice to customers based on failure to pay after 30 days).

Veliquette Dep. at 250:9-251:15 and Dep. Ex. 9.  After this dispute arose, SFG asked Dell's to bring its balance current and to pay future deliveries COD, and Dell's complied.  SFG/RR Dep. at 59:19-60:4. Thus, SFG had no right to cancel the Contract based on the credit limit terms in the Contract.

In short, SFG's allegations of breach regarding payment within thirty days and the credit limit are not legally relevant, and should not go to the jury.

### d.   Alleged breach based on price reduction and exiting previous year's purchase order

SFG also contends that Dell's breached the Contract because it obtained a price reduction and allegedly "exited" the prior year's purchase order to take advantage of new pricing.  These contentions are frivolous.  SFG <u>agreed</u> to the price reduction.  Mondella Decl. at 25.[10]  SFG <u>agreed</u> to apply the 49 cents per pound price to certain purchase orders that predated the Contract.  <u>Id</u> at 28.[11]  SFG's <u>agreement</u> to these requests do not equal a breach of Contract by Dell's.  And, prior to this dispute, SFG never claimed that it did.  Mondella Decl. at 26 and 28; SFG/RR Dep. at 56:19-57:21.  SFG cannot refuse to perform the remainder of the Contract based on these agreed modifications or adjustments.

### e.   Alleged breach based on freight deduction

SFG contends that Dell's breached the Contract by taking an unauthorized deduction of $7,700 from an invoice to cover freight charges.  As discussed below, however, this does not support SFG's unilateral cancellation of the Contract.

---

[10]  <u>See also</u> Hicks Dep. at 54:12-55:13 and Dep. Ex. 9 (SFG charged 47 cents a pound, then determined it preferred to charge 48 cents per pound, so invoiced Dell's a penny for each load, which Dell's paid); SFG/RR Dep. at 93:21-95:5 and Dep. Ex. 17 (same); SFG/DV at 444:22-445:10.

[11]  SFG's contention regarding the prior year's purchase order is nonsensical.  By definition, it refers to a different contract — a purchase order from the prior year.

Over the course of the Contract, the parties had a dispute over freight charges for transporting bins from Dell's back to SFG.  Hicks Dep. at 66:17-67:24 and Dep. Ex. 13; SFG/RR Dep. at 79:18-80:13; SFG/DV 250:25-252:17.  Under the Contract, SFG agreed "to pay freight on bins and barrel return."  Mondella Decl. Ex. A.  SFG misunderstood the Contract and refused to pay certain freight charges for the return of Dell's bins to GLPC.  SFG/DV Dep. at 463:2-464:2, 466:19-468:3; Hicks Dep. Ex. 13.  Dell's, therefore, paid freight charges on SFG's behalf, and deducted $7,700 from its payment to SFG to cover the cost.  Mondella Decl. at 35.

During the course of this litigation, SFG acknowledged that it owed Dell's $4,333 of this $7,700, but there is still $3,367 in dispute.  SFG/RR Dep. at 80:15-81:2, 86:22-87:24; Response of Defendants to Plaintiff's August 25, 2011 Combined Set of Discovery, at Answer to Interrogatory No. 3 (admitting "Dell's was entitled" to deduct $4,333). This disputed amount ($3,367) represents a very small amount in comparison to the total value of the Contract ($1.2m+).  SFG/RR Dep. at 90:9-91:2 (acknowledging very small amount in dispute in comparison to overall value of contract); Mondella Decl. at 37.  Other than this disputed amount, Dell's has paid for all cherries that SFG supplied to it under the Contract.  SFG/DV Dep. at 488:6-488:10; Mondella Decl. at 38.  SFG cannot take this dispute over $3,000, that it created from its own misreading of the Contract that it drafted, and use it as a basis to avoid the entire Contract and profiteer from higher prices.

> **f.    Alleged statement by Dell's that it would not purchase full balance of loads**

SFG's final contention is that Dell's breached the Contract in April 2010, when Arthur Mondella allegedly told Dean Veliquette that Dell's would not purchase all of the remaining loads.  See Answer to Second Amended Complaint and Counterclaim (Docket No. 54) at ¶ 32 (Dell's "breached the agreement by expressly informing Shoreline that it would not comply with

the terms of the agreement"); see also SFG/RR Dep. at 61:9-62:8, 65:15-65:25. This alleged breach by Dell's does not support SFG's unilateral cancellation of the Contract.

As a preliminary matter, Dell's denies that Mr. Mondella made any such statement. Deposition of Arthur Mondella (5/6/11) ("Mondella Dep.") at 213:7-213:25, 217:21-217:25; Mondella Decl. at 39. But, even if he did, SFG did not have the right to cancel the remaining deliveries. At best, SFG had the right to demand assurances from Dell's that Dell's would perform the Contract. N.Y.U.C.C. § 2-609 (seller may serve written demand for adequate assurance and suspend performance until assurance is provided). SFG made no such demand. Veliquette Dep. at 10:5-10:22; SFG/RR Dep. at 63:7-63:15, 66:4-67:7. In any event, Dell's made clear its intent to take the full 100 loads both orally and in an email dated June 25, 2010. Mondella Decl. at 12, 40 and Ex. D. SFG refused to honor the Contract and is liable to Dell's for breach.

### 2. Even If Dell's Breached The Contract, SFG Had No Right To Cancel The Remaining Deliveries.

Even if Dell's breached the Contract with respect to one or more of the installments, SFG still had no right to cancel the remaining deliveries as a matter of law. Thus, the Court should find that SFG breached the Contract when it refused to deliver the remaining product to Dell's, and should enter summary judgment on liability in favor of Dell's on its breach of contract claim.

The parties' Contract is an installment contract under the definition contained within the Uniform Commercial Code. N.Y.U.C.C. Law § 2-612(1) (an installment contract as a contract for the sale of goods that "requires or authorizes the delivery of goods in separate lots to be separately accepted"). The UCC makes clear that a breach with respect to an individual installment does not automatically give a seller the right to cancel future deliveries. Id. at

§ 2-612(3).  "A breach of the entire contract occurs *only* when a non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract."  Ho Myung Moolsan Co., Ltd v. Manitou Mineral Water, Inc., 2010 WL 4892646, *3 (December 2, 2010 2nd Cir.) (citing N.Y.U.C.C. 2-612(3)).[12]  The "substantial impairment" rule is designed "to preclude a party from canceling a contract for trivial defects."  Hubbard v. UTZ Quality Foods, Inc., 903 F. Supp. 444, 450 (W.D.N.Y. 1995).

The case of Petroleo Brasileiro S.A., Petrobras v. The IBE Group, Inc., 1995 WL 326502 (May 31, 1995 S.D.N.Y.) illustrates application of the "substantial impairment" rule on summary judgment.  In that case, Petrobras entered into a contract with IBE to purchase methanol at a specified price.  Under the contract, IBE agreed to make twelve shipments of methanol to Petrobas in Brazil.  The contract price turned out to favor Petrobras as the price of methanol increased after the parties' entered into the contract.  IBE made two of the twelve shipments to Petrobras, but refused to complete the remaining shipments.  Petrobras sued for breach of contract.  IBE claimed that it was entitled to cancel the contract because Petrobas had been late in accepting drafts, late in making payments, and had disputed demurrage charges.  The court held that IBE did not have the right to cancel future deliveries based on Petrobras' breaches with respect to the first two shipments.  In reaching this conclusion, the court noted that the parties had a prior course of dealing in which Petrobras had engaged in similar conduct.  The court observed that despite Petrobas' prior breaches, "IBE continued to make shipments to Petrobras, and never treated these problems as sufficient to warrant terminating a given contract or the business relationship."  Id. at *7.  This prior course of dealing indicated that IBE did not consider the breaches to "substantially impair" the value of the entire contract.  Based on this evidence,

---

[12]  Unreported cases are attached as Composite Exhibit 1.

the court entered summary judgment in favor of Petrobras on its breach of contract claim.  See also Hudson Feather & Down Products, Inc. v. Lancer Clothing Corp., 128 A.D.2d 674, 674 (N.Y. App. Div. 1987) (delay in payment on first two installments did not give rise to right to cancel entire contract); Emanuel Law Outlines, Inc. v. Multi-State Legal Studies, Inc., 899 F. Supp. 1081, 1088 (S.D.N.Y. 1995) (late delivery did not substantially impair whole contract); Trans World Metals, Inc. v. Southwire Co., 769 F.2d 902, 907 (2nd Cir. 1985) (late shipment of an installment did not give rise to right to cancel the entire contract).

Here, any alleged breach by Dell's occurred with respect to one or more individual installments, and did not substantially impair the contract as a whole.  Issues such as the supply of bins, timeliness of payments, exceeding the credit limit, and the number of loads ordered, relate to individual shipments.  The parties' course of performance show that these were not material issues, and that strict compliance was not mandatory.  SFG cannot acquiesce for ten months and then suddenly claim that these alleged prior breaches substantially impair the value of the Contract in its entirety.  SFG could have demanded strict performance on future installments, but it had **no** right to cancel the Contract in its entirety.  The Court should therefore enter summary judgment on liability in favor of Dell's on its breach of contract claim.

C.     **SFG's Defense of Commercial Impracticality Fails As A Matter of Law.**

SFG also contends that it was excused from fulfilling the remainder of the Contract because it was commercially impractical for it to perform.  The Court should strike this defense, and enter summary judgment in favor of Dell's.

SFG's defense of commercial impracticality lacks any factual support.  By SFG's own admission, it had more than enough cherries to meet Dell's purchase orders and to fulfill the Contract.   GLPC Dep. at 58:17-59:17; SFG/DV Dep. at 113:18-114:9, 435:10-435:21 ("the availability of fruit was never the issue"), and 443:20-444:16.  SFG simply chose not to do so.

SFG had a warehouse full of cherries that it sold to others, instead of Dell's, because it could get a higher price elsewhere.  SFG/RR Dep. at 31:24-32:6 (by June 2010, SFG was able to sell cherries to others at higher price).[13]   Indeed, outside the context of this litigation, Dean Veliquette told a group of Michigan cherry growers, that he did not honor the Contract with Dell's because he wanted to get a better price for the cherries.  Fouch Dep. at 23:2-24:19, 38:9-38:23.   Accordingly, the Court should enter summary judgment in favor of Dell's on liability with respect to Dell's claim for breach of contract and should strike SFG's defense of commercial impracticality.

**D.**     **SFG's Conduct Violates PACA.**

SFG's conduct is not just a breach of contract.  It also violates the Perishable Agricultural Commodities Act ("PACA").  The Court should therefore enter summary judgment in Dell's favor on Count IV of its Second Amended Complaint.

PACA provides that it is unlawful "for any dealer to . . . fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity bought or sold or contracted to be bought, sold, or consigned in interstate or foreign commerce by such dealer."  7 U.S.C. § 499b(2).  Here, SFG, a PACA licensed dealer, refused to deliver cherries to Dell's in accordance with the parties' Contract.  SFG, therefore, violated PACA and Dell's is

---

[13]      See also SFG/RR Dep. at 32:11-34:8; SFG/DV Dep. at 64:7-64:13; GLPC Dep. at 200:8-220:6 (reviewing spreadsheet showing sales to third parties at a higher price during relevant time period); SFG's Response to Dell's Second Requests for Admissions, Response Nos. 6-13 (admitting sales to others at higher price).  By selling 50 loads of cherries to others at 58 cents a pound, instead of 49 cents a pound, SFG could generate $112,500 in additional funds.  By selling these same cherries for 72 cents a pound, instead of 49 cents a pound, SFG could generate $287,500 in additional funds.  SFG/RR Dep. at 143:13-144:3,145:20-146:23 and Dep. Ex. 24; see also Veliquette Dep. at 140:13-140:16 (Dell's price about 17-18% below average of all customers).

entitled to summary judgment on liability with respect to Count IV of the Second Amended Complaint.

**E.      SFG's Counterclaims Against Dell's Fail As A Matter of Law.**

The Court should also enter summary judgment in favor of Dell's on SFG's counterclaims for breach of contract and violation of PACA.  These claims are not supported by the parties' Contract, the undisputed facts, or the law, and should be dismissed with prejudice. Clearing out immaterial underbrush like this will streamline matters for the jury or motivate the parties to settle.

SFG seeks to recover a bin rental fee of $20 per bin, for a total amount of $17,220, for SFG bins used to fill loads under the Contract.  SFG/RR Dep. at 96:20-97:6; Response of Defendants to Plaintiff's August 25, 2011 Combined Set of Discovery, at Answer to Interrogatory No. 3.  SFG also seeks to recover storage costs from Dell's in the amount of $5,323.80, for storage fees allegedly incurred housing product for Dell's at Great Lakes Packing. SFG/RR Dep. at 98:14-99:4; Response of Defendants to Plaintiff's August 25, 2011 Combined Set of Discovery, at Answer to Interrogatory No. 3.  SFG's counterclaim for these amounts is utterly frivolous.  These are nothing but invented, imaginary claims.

There is nothing in the Contract that allows SFG to charge a bin rental fee and nothing that requires Dell's to pay such fees.  Mondella Decl. at Ex. A; SFG/RR Dep. at 52:10-52:12; SFG/DV Dep. at 58:7-58:10, 126:6-126:12 (admits not entitled to bin rental fee under Contract). Mondella Decl. at 42.  SFG could not produce a single document to show that it charges other customers a bin rental fee.  See SFG Response to Dell's Supplemental Requests for Admission and Requests for Production dated November 23, 2011, at Request for Production No. 5, 7, 9, 11, 13. Moreover, early in the Contract, SFG attempted to charge Dell's a bin rental fee.  Dell's

would not agree to pay a bin rental fee, and SFG did not pursue any bin rental fee until this litigation ensured.  SFG/RR Dep. at 97:7-97:18; SFG/DV Dep. at 125:25-126:17.

SFG's claim for a storage fee meets a similar fate.  The Contract does not provide for a storage fee in favor of SFG, and SFG had never charged Dell's a storage fee in the past. Mondella Decl. at Ex. A; Veliquette Dep. at 42:21-43:18; Mondella Decl. at 42.  SFG cannot recover these amounts and its counterclaim should be dismissed.

SFG also seeks to recover $11,672 from Dell's for the price reduction it agreed to from the 49 cents per pound specified in the Contract.  Response of Defendants to Plaintiff's August 25, 2011 Combined Set of Discovery, at Answer to Interrogatory No. 3.  The evidence, already discussed above, is undisputed that SFG <u>agreed</u> to the price reduction.  It cannot now claim Dell's shorted it or that Dell's breached the Contract by paying exactly what SFG invoiced for the cherries.  SFG's claim is preposterous.

Moreover, SFG cannot, under any circumstances, assert a claim under PACA's trust provisions for a bin rental fee, storage costs, or alleged "short payments."[14]  It is undisputed that SFG never invoiced Dell's for these amounts.  SFG/RR Dep. at 97:19-97:25 (no invoice for bin rental fee); SFG/RR Dep. at 99:19-100:8 (no invoice for storage fees); Hicks Dep. at 91:6-91:15 (can't recall any invoice for storage fees being sent to Dell's); SFG/RR Dep. at 95:14-95:24 (corporate representative doesn't know if amount of agreed price reduction was ever invoiced to Dell's).  Thus, SFG never invoked any rights under PACA with respect to these amounts, and its PACA trust claim fails as a matter of law.

---

[14]  Under certain circumstances, PACA provides an unpaid seller with a trust interest in the buyer's "inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products."  7 U.S.C. § 499e(2).  The seller must give the buyer notice of the intent to invoke the provisions of

That leaves SFG's claim for disputed freight costs in the amount of $3,367. As discussed above, SFG acknowledges that it was mistaken in its interpretation of the Contract, and admits that it was responsible for freight charges for return of bins. SFG has failed to demonstrate that Dell's in fact owes it the $3,367. Since this is an affirmative claim for relief, SFG bears the burden of proof. SFG has failed to meet that burden, and Dell's is entitled to summary judgment on the entirety of SFG's Counterclaim.

## IV.   CONCLUSION

The Court should enter summary judgment in favor of Dell's on liability on Dell's claims against SFG for breach of contract *and* violation of PACA, and should likewise grant summary judgment in Dell's favor on SFG's counterclaims and strike SFG's defense of commercial impracticality. This would streamline the case and reserve for trial issues concerning Dell's damages and its tort claims against Cherries R Us, Inc., Cherry Ke, Inc., and Great Lakes Packing, Co.

If the Court determines that it cannot enter summary judgment on liability at this time, then Dell's requests, based on the facts and arguments presented herein, and pursuant to Fed. R. Civ. P. 56(g), that the Court strike all or a portion of SFG's defenses and counterclaims, and find that:

1.     Dell's did not breach the contract by failing to order 10 loads per month and/or SFG was not excused from performing the remainder of the contract based on Dell's failure to order 10 loads per month, and any evidence or argument concerning this issue is excluded from trial;

---

PACA, which is typically accomplished by including such notice on the seller's invoice. Id. at 499e(3).

2.      Dell's did not breach the contract by failing to supply all of the bins necessary for shipping fruit to Dell's and/or SFG was not excused from performing the remainder of the contract based on Dell's failure to provide such bins, and any evidence or argument concerning this issue is excluded from trial;

3.      Dell's did not breach the contract by paying after 30 days and/or SFG was not excused from performing the remainder of the contract based on Dell's failure to pay within 30 days, and any evidence or argument concerning this issue is excluded from trial;

4.      Dell's did not breach the contract by exceeding its credit limit and/or SFG was not excused from performing the remainder of the contract based on Dell's exceeding its credit limit, and any evidence or argument concerning this issue is excluded from trial;

5.      Dell's did not breach the contract by exiting the prior year's purchase order early and/or SFG was not excused from performing the remainder of the contact based on Dell's exiting the prior year's purchase order early, and any evidence or argument concerning this issue is excluded from trial;

6.      Dell's did not breach the contract by obtaining an agreed price reduction and/or SFG was not excused from performing the remainder of the contract based on the agreed price reduction, and any evidence or argument concerning this issue is excluded from trial;

7.      Dell's did not repudiate the contract in April 2010 and/or SFG was not excused from performing the remainder of the contract based on a discussion between Dean Veliquette and Arthur Mondella in April 2010, and any evidence or argument concerning this issue is excluded from trial;

8.      Dell's did not breach the contract by taking a reduction for freight costs owed by SFG and/or SFG was not excused from performing the remainder of the Contract based

on Dell's taking a deduction for freight costs, and any evidence or argument concerning this issue is excluded from trial;

9.      It was not commercially impractical for SFG to perform the Contract and/or SFG was not excused from performing the remainder of the Contract based on commercial impracticality, and any evidence or argument concerning this issue is excluded from trial;

10.      SFG is not entitled to recover damages for a bin rental fee from Dell's, and any evidence or argument concerning this issue is excluded from trial;

11.      SFG is not entitled to recover damages for storage fees from Dell's, and any evidence or argument concerning this issue is excluded from trial;

12.      SFG is not entitled to recover damages for a price reduction and/or "short payments" from Dell's, and any evidence or argument concerning this issue is excluded from trial; and

13.      SFG is not entitled to recover $3,667 from Dell's for freight charges, and any evidence or argument concerning this issue is excluded from trial.

Dated: March 30, 2012

HUNTON & WILLIAMS LLP


By:____/s/ Robert M. Tata_____
     Robert A. Rich
     200 Park Avenue
     New York, New York  10166
     (212) 309-1000
     Fax (212) 309-1875
     rrich2@hunton.com

       -and-

     Robert M. Tata (VSB No. 30101)
     *Admitted Pro Hac Vice*
     Wendy C. McGraw (VSB No. 37880)
     *Admitted Pro Hac Vice*
     500 E. Main Street, Suite 1000
     P.O. Box 3889
     Norfolk, Virginia 23514-3889
     (757) 640-5300
     Fax (757) 625-7720
     btata@hunton.com

     *Attorneys for Plaintiff*
     *Dell's Maraschino Cherries Co., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2012 a true and complete copy of Memorandum in Support of Dell's Motion for Partial Summary Judgment was served by electronic mail upon:

> Gregory Brown, Esq.
> Law Offices of Bruce Levinson
> 747 Third Avenue, Fourth Floor
> New York, NY   10017-2803
> Email: gregory.brown@blevlaw.com
>
> *Counsel for Defendants*
>
>      and
>
> William W. Webb, Esq.
> *Admitted Pro Hac Vice*
> P.O. Box 1
> Birmingham, MI   48012-0001
> Email: wwebb@statebar.net
>
> *Counsel for Cherry Ke, Inc., Cherries R-US, Inc., and Great Lakes Packing Company*

A copy of the foregoing will also be forwarded by UPS Next Day to Gregory Brown, Esq. at the address listed above.

> _____/s/_____
> Robert M. Tata (VSB No. 30101)
> *Admitted Pro Hac Vice*
> 500 E. Main Street, Suite 1000
> P.O. Box 3889
> Norfolk, Virginia 23514-3889
> (757) 640-5300
> Fax (757) 625-7720
> btata@hunton.com