UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

DELL'S MARASCHINO CHERRIES CO., INC.,

                       Plaintiff,

      - against -

SHORELINE FRUIT GROWERS, INC.,
CHERRIE KE, INC., CHERRIES R-US, INC.
and GREAT LAKES PACKING CO.,

                    Defendants.

------------------------------------------------------------------------X

Case No. 10-cv-3789 (ILG) (RER)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Law Offices of Bruce Levinson
Attorneys for All Defendants
747 Third Avenue, Fourth Floor
New York, New York 10017-2803
(212) 750-9898

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

I.   BACKGROUND ......................................................................................... 1

II.  ARGUMENT ............................................................................................ 5

     A.   Standard of Review .......................................................................... 5

     B.   Defendants Cannot Be Deemed to Have Breached the Contract ......................... 7

          1.   No Valid Contract Was Formed Between the Parties .............................. 8

          2.   Dell's Did Not Perform Its Obligations Under the Contract ................... 9

          3.   Shoreline Fulfilled All of Its Obligations Under the Contract ............... 10

               i.   Shoreline Tendered Cherries in Brine to Dell's As Required by
                    the Contract .................................................................. 10

               ii.  Shoreline's Performance was Excused ........................................ 12

     C.   Plaintiff Is Not Entitled to any Recovery Pursuant to UCC §§ 2-711, 2-712
          and 2-715 ..................................................................................... 14

          1.   Plaintiff's Purported Cover Purchases Were Made in Bad Faith ............ 14

          2.   Plaintiff's Purchase of Cherries at $1.02 per Pound Was
               Not Reasonable ............................................................................. 15

          3.   Plaintiff's Purported Cover Purchases Were Not Made Without
               Unreasonable Delay ....................................................................... 15

          4.   Dell's Is Ineligible for Incidental or Consequential Damages ............... 16

     D.   Breach of Covenant of Good Faith and Fair Dealing ............................... 17

     E.   Violation of 7 U.S.C. § 499b ............................................................ 17

     F.   Tortious Interference With Contract or Prospective Economic Advantage ........ 19

          1.   Dell's Has No Claim for Tortious Interference with Contract ............... 19

          2.   Dell's Has No Claim for Tortious Interference with Prospective Economic
               Advantage ................................................................................... 21

G. Conspiracy ................................................................................................22

H. Shoreline is Entitled to Summary Judgment on Its Counterclaims ....................23

    1. Dell's Breached the Contract in Numerous Respects..............................23

    2. Dell's Violated PACA by Refusing to Take Delivery of the Loads
       Tendered by Shoreline ...........................................................................24

I. Shoreline Is Entitled to Interest at the Rate of 18% *per annum* and
   Attorneys' Fees ..................................................................................................25

III. CONCLUSION ................................................................................................27

## TABLE OF AUTHORITIES

U.S. SUPREME COURT
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................5
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................5, 6
*Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871 (1990) ..........................................................6
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...........................6


U.S. COURT OF APPEALS
*10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*,
        634 F.3d 112 (2d Cir.2011)....................................................................................7
*Argilus, LLC v. PNC Fin. Services Group, Inc.*, 419 F. App'x 115 (2d Cir.2011) ...............21
*Bhan v. NME Hosps., Inc.*, 929 F.2d 1404 (9th Cir. 1991)...................................................6
*Brink's Ltd. v. S. African Airways*, 93 F.3d 1022 (2d Cir.1996)............................................7
*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229 (2d Cir.1999) ..........22
*Don King Productions, Inc. v. Smith*, 47 F. App'x 12 (2d Cir.2002) ....................................20
*Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052 (2d Cir.1992).....17
*Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73 (2d Cir.2002) ..................................17
*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir.1991)........................5
*Johnson v. Nextel Communications, Inc.*, 660 F.3d 131 (2d Cir.2011) ..............................7, 23
*Joseph Martinelli & Co. v. Simon Siegel Co.*, 176 F.2d 98 (1st Cir.1949)..........................17, 24
*Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60 (2d Cir.2010)......................................20
*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir.2006).............................................21, 22
*Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986) .........................................5
*McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188 (2d Cir.1995)..9
*Middle Mountain Land and Produce, Inc. v. Sound Commodities, Inc.*,
        307 F.3d 1220 (9th Cir. 2002)............................................................................. 26
*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir.2010) .....7, 23
*Pandozy v. Tobey*, 335 Fed.Appx. 89 (2d Cir.2009).............................................................22
*Parkwood Lumber, Inc. v. Rivisco, Inc.*, 205 F.3d 1324 (2d Cir.2000)................................11
*Reilly v. Reem Contracting Corp.*, 380 F. App'x 16 (2d Cir.2010) ......................................8
*Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571 (2d Cir.1983) ..............................8
*Scutti Enterprises, LLC. v. Park Place Entm't Corp.*, 322 F.3d 211 (2d Cir.2003)................19
*Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855 (2d Cir. 1985)......................3
*SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Properties, LLC*,
        467 F.3d 107 (2d Cir.2006)....................................................................................7
*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89 (2d Cir.2007) ...........8
*US Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465 (9th Cir.1994)................................5


U.S. DISTRICT COURTS
*Allied Semi-Conductors Int'l, Ltd. v. Pulsar Components Int'l, Inc.*,
        907 F. Supp. 618 (E.D.N.Y. 1995) ......................................................................11
*Anderson News, L.L.C. v. Am. Media, Inc.*, 732 F. Supp. 2d 389 (S.D.N.Y.2010)...............22
*Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377 (S.D.N.Y. 2005)............26
*Cliffstar Corp. v. Riverbend Products, Inc.*, 750 F. Supp. 81 (W.D.N.Y.1990)....................12
*Discover Group, Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78 (E.D.N.Y.2004)................7

iii

*Fragin v. Mezei*, 2012 WL 489100 (S.D.N.Y. Feb. 14, 2012) (09-cv-10287) .....................8
*Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*, 983 F. Supp. 403 (S.D.N.Y.1997).........9
*ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234 (S.D.N.Y.1997) .......................................17
*K.M.L. Laboratories Ltd. v. Hopper*, 830 F. Supp. 159 (E.D.N.Y.1993) .............................9
*Obex Sec., LLC v. Healthzone Ltd.*,
    2011 WL 710608 (S.D.N.Y., Feb. 28, 2011) (10-cv-6876-SAS) ............................17
*Point Developers, Inc. v. F.D.I.C.*, 921 F.Supp. 1014 (E.D.N.Y.1996) ...............................7
*Polygram, S.A. v. 32-03 Enterprises, Inc.*, 697 F.Supp. 132 (E.D.N.Y.1988) ....................26
*Reds Market v. Cape Canaveral Cruise Line, Inc.,* 181 F.Supp.2d 1339 (M.D.Fla. 2002)...26
*Subaru Distrib. Corp. v. Subaru of Am., Inc.,*
    2002 WL 413808 (S.D.N.Y. Mar. 18, 2002) (98-cv-5566) .....................................12
*Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc.,*
    2005 WL 1149774 (S.D.N.Y., May 16, 2005) (04-cv-2666) ..................................26
*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York,*
    735 F. Supp. 2d 42 (S.D.N.Y. 2010)...........................................................................7
*Tray-Wrap, Inc. v. Meyer*, 1994 WL 710804 (S.D.N.Y. Dec. 20, 1994) (90-cv-7688) ........18

N.Y. COURT OF APPEALS
*Alvord & Swift v. Stewart M. Muller Const. Co., Inc.*, 46 N.Y.2d 276 (1978).....................19
*Foster v. Churchill*, 87 N.Y.2d 744 (1996)..........................................................................19
*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996)..........................................19
*Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co.*, 79 N.Y.2d 801 (1991).........13
*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422 (2007) ......................20

STATUTES
7 CFR § 46.2 ...........................................................................................................................25
7 C.F.R. § 46.43 ...............................................................................................................10, 18
7 U.S.C. § 499b....................................................................................................................*passim*
Fed. R. Civ. P. 56.....................................................................................................................5
NY UCC § 2-106 ....................................................................................................................11
NY UCC § 2-201 ....................................................................................................................26
NY UCC § 2-319 ....................................................................................................................10
NY UCC § 2-401 ....................................................................................................................11
NY UCC § 2-507 ....................................................................................................................11
NY UCC § 2-615 ....................................................................................................................12
NY UCC § 2-711 ....................................................................................................................14
NY UCC § 2-712 ....................................................................................................................14
NY UCC § 2-713 ....................................................................................................................14
NY UCC § 2-715 ...............................................................................................................14, 16
NY UCC § 2-703 ....................................................................................................................11
NY UCC § 2-708 ....................................................................................................................11

TREATISES
Restatement 2d of Agency .......................................................................................................3
Restatement 2d of Contracts ....................................................................................................7

Defendants, Shoreline Fruit Growers, Inc. ("Shoreline"), Cherry Ke, Inc. i/s/h/a Cherrie Ke, Inc. ("Cherry Ke"), Cherries R Us, Inc. i/s/h/a Cherries R-Us, Inc. ("Cherries R Us") and Great Lakes Packing Co. ("Great Lakes") (collectively, "Defendants"), submit this memorandum of law in support of their motion for summary judgment dismissing the complaint of Dell's Maraschino Cherries Co., Inc. ("Dell's" or "Plaintiff"), and awarding defendant Shoreline judgment against Dell's on its counterclaims.

## I.   BACKGROUND

This simple breach of contract dispute is part of a power play by the world's second largest purchaser of brine cherries, Dell's, against a group of cherry farmers from Northwestern Michigan.  Plaintiff has carried on about conspiracies and tortious interference, it has brought in cherry harvesters and processors as additional parties, it has taken a long series of depositions, and it has subpoenaed each of Shoreline's biggest customers.  This scorched-earth policy has not produced a case worth any merit.  In the end, Dell's breached the contract and its attempt to lay blame on Defendants is unavailing.

In an industry where oral contracts are the norm, and the rare written contract is verbally modified at will (Exhibits M, N and P), Dell's demanded in the last twenty-four days of a twelve month contract that Shoreline make available to Dell's more than half of the total volume of one hundred truckloads of cherries (Exhibit GG) covered by a one-page written agreement between the parties (Exhibit G).  This demand, for fifty-four loads instead of ten, followed months of Dell's failure to comply with the spirit and letter of the contract, and rendered performance by Shoreline impossible.  The contract expressly calls for monthly shipments of approximately ten loads per month throughout its term and does not contemplate, or even suggest, that Dell's could

- 1 -

take a fraction of the 100 loads during the first eleven months and then suddenly demand fifty-four loads as the agreement was about to expire (Exhibit G). Nevertheless, Shoreline made an earnest effort to satisfy one of its biggest customers and get Dell's as many cherries as possible. Then, in the midst of what Shoreline thought were good faith negotiations, Dell's precipitously commenced the instant action. Nearly two years of overbearing litigation by Plaintiff has followed, producing a record which vindicates Shoreline and is bereft of any evidence of wrongdoing by co-defendants Cherry Ke, Cherries R Us or Great Lakes.

Plaintiff is the purchaser of wholesale quantities of brine cherries which it "finishes" or processes into maraschino cherries at its facilities in Red Hook, Brooklyn (Exhibit A). Defendant, Shoreline, is an agricultural cooperative engaged in the processing, marketing and sale of brine cherries, and has its principal place of business in Traverse City, Michigan (Exhibit C). Cherry Ke operates and maintains cherry orchards owned by Cherries R Us. Those companies, along with other members and associates who belong to the Shoreline cooperative, sell raw cherries to Shoreline for processing (Exhibit Z). Shoreline engages Great Lakes as its agent[1] (Exhibit J) to take delivery of the raw cherries, and to cure, grade, pit, store and coordinate shipment of the brined cherries (Exhibit AA). Shoreline's co-defendants were not parties to the contract with Dell's and had no obligations to Dell's (Exhibit G).

Prior to July, 2009, Dell's and Shoreline had been doing business together for roughly fifteen years. During that time, nearly all of their transactions were based on oral arrangements for a relatively small volume of cherries (Exhibits M and N). They had only entered into one written agreement, and the largest transaction was for thirteen loads over the course of one year.

---

[1] As reflected in Exhibit J, Great Lakes was at all times an agent for a disclosed principal, Shoreline. Accordingly, Great Lakes can have no liability to Dell's arising out of a contract between Shoreline and Dell's. *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855 (2d Cir. 1985) *citing* Restatement 2d of Agency §§ 320 and 328.

- 2 -

In July, 2009, Dell's president, Arthur Mondella ("Mondella"), and Shoreline's brine cherry manager, Dean Veliquette ("Veliquette"), agreed to significantly increase this volume. Veliquette sent Mondella a proposal which called for the sale to Dell's of 120 truckloads of cherries over the course of one year (Exhibit L). After further negotiations, the parties executed a written sales agreement on July 13, 2009 (the "Contract") (Exhibit G). The Contract provides that Dell's will purchase 100 truckloads of cherries in brine at a price of $0.49 per pound F.O.B. Kewadin, Michigan. Payment terms are 30 days with a credit limit of $130,000.00. Notably, the Contract calls for the delivery of "10/loads per month average", and use of Dell's containers from August, 2009.

Almost immediately after the Contract was signed, Dell's violated its terms by failing to provide Shoreline with the bins necessary to store and prepare cherries for shipment (Exhibit Q). Later, after promising Shoreline that it would supply bins and pay return freight on empty bins if Shoreline lowered the price to $0.48, then $0.47 per pound (Exhibit CC), Dell's not only failed to provide empty bins for all of its loads, but failed to pay return freight on empty bins that Shoreline provided to Dell's from its own supply (Exhibits Q and T). Dell's breaches of the Contract were numerous, and are more fully discussed in the accompanying Veliquette affidavit. Critically, Dell's never came close to honoring its obligation to take delivery of approximately ten loads per month (Exhibits S and O). Furthermore, plaintiff sought to violate its $130,000.00 credit limit with impunity, placing its eleventh-hour order for fifty-four loads, worth $675,000.00, when it already owed shoreline $83,540.00.

In April, 2010, which was seven months into the Contract, and after unseasonably warm weather which Veliquette believed might be a harbinger of a small crop for 2010, he began calling Shoreline's customers to determine what their requirements would be for the coming year.

- 3 -

Mondella told Veliquette that Dell's would only need thirty-five more loads through the end of the Contract period in September, 2010 rather than the contractually-specified balance of the 100 loads. Based on Mondella's unequivocal representation, Shoreline satisfied its other customers' requirements, eventually shipping thirty-four loads to Dell's in the period between April 1, 2010 and September 13, 2010 (Exhibit S).

Over the summer, Veliquette's concerns about the size of the harvest were born out, and the market price for cherries neared $0.70 per pound. At that point, Dell's reversed itself and suddenly demanded that Shoreline send all 100 loads under the Contract (Exhibit EE). Realizing that $0.49 per pound was a better price than it could obtain elsewhere, Dell's sent Shoreline fifty-four purchase orders on August 11, 2010 (Exhibit GG), when less than thirty days remained in the Contract period. Dell's knew, or should have known, that performance was impossible for Shoreline, and that in any event, an order of that magnitude would have constituted a massive breach of the credit terms established in the Contract. Nevertheless, when Shoreline could not comply with Dell's demands, Dell's commenced the instant action.

In May, 2011, after considerable discovery, after the deadline for adding additional parties had expired, and, notably, after learning that Shoreline is an agricultural cooperative with limited assets, Dell's moved to amend its complaint. Cherry Ke, Cherries R Us and Great Lakes were dragged into the case based on theories of tortious interference and conspiracy (Exhibit D). After further extensive discovery, there has not been a shred of evidence produced which supports Dell's allegations. There is no objective basis for the additional Defendants having been sued. Based on controlling law, and facts set forth in the accompanying affidavit and statement of undisputed facts, defendants are entitled to judgment against Dell's dismissing its claims in their entirety, and in favor of defendant, Shoreline, granting damages on its counterclaims.

- 4 -

## II.   ARGUMENT

### A.      Standard of Review

Summary judgment is properly granted when there are no genuine disputed issues of material fact, and when, viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that there is no material factual dispute. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert denied*, 480 U.S. 932 (1987). A fact is material only if, under applicable substantive law, it would affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the Court must review the substantive law in order to identify which facts are material. *Id.*

When the moving party bears the burden of proof on a particular issue, it may discharge its burden by making a *prima facie* showing in support of its position on that issue. *US Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir.1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id.*; *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir.1991). Once the movant has done so, the non-moving party must set forth specific facts controverting the movant's *prima facie* case. *US Local 343*, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." *Id.* It must do more than present a mere "scintilla" of evidence in its favor. *Anderson*, 477 U.S. at 252. This standard does not change merely because resolution of the relevant issue is "highly fact specific." *Id.* Accordingly, summary judgment is appropriate even if the evidence is "merely colorable" or "not significantly probative." *Anderson*, 477 U.S. at 249-50.

- 5 -

When the moving party does not bear the burden of proof on an issue, it may discharge its burden by demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 885 (1990). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). A complete absence of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

Within this framework, the court must regard as true the opposing party's evidence so long as it is supported by affidavits or other evidentiary material in admissible form. *Celotex*, 477 U.S. at 324. The court must also draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In the case at bar, there is no genuine dispute as to any material fact. Defendants are entitled to judgment as a matter of law, and after considering the governing substantive law and the material facts contained in the accompanying affidavits and exhibits, this Court can only conclude that entry of summary judgment against Plaintiff is warranted. Not only is each of Plaintiff's causes of action bereft of factual support, but Defendants' counterclaims are well-supported by the record.

## B.     Defendants Cannot Be Deemed to Have Breached the Contract

To state a claim for breach of contract, a plaintiff must establish "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages[2]." *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 142 (2d Cir.2011). In interpreting contracts, the general rule is that the document must be "construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself." *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 56 (S.D.N.Y. 2010). The court must be careful not to "add or excise terms under the guise of interpreting the writing." *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 125 (2d Cir.2011).

However, "when a contract is ambiguous, the court may and should look to the prior negotiations of the parties to determine what was intended." *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Properties, LLC*, 467 F.3d 107, 126 (2d Cir.2006) (internal punctuation omitted). Even the custom and practice of the industry, Restatement 2d of Contracts § 202, and the prior conduct of the parties may be considered by the court. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 119 (2d Cir.2010) ("There is no surer way to find out the intent of the parties to a contract than to see what they have done.") (internal punctuation and citation omitted). This is particularly true where the disputed agreement does not contain a merger clause. Under such circumstances, "extrinsic evidence is admissible to supply the remaining terms of the parties' overall understanding." *Point Developers, Inc. v. F.D.I.C.*, 921

---

[2] In diversity cases, the law of the forum applies. *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1030 (2d Cir.1996). In the absence of a forum selection clause, under New York's choice of law rules, the law of the "jurisdiction with the most significant interest in, or relationship to, the dispute" governs. *Id.* While both Michigan and New York have strong claims to the instant dispute, the locus of the alleged damages is New York, and it is the law of that state that Defendants shall apply in this memorandum. *See gen., Discover Group, Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78 (E.D.N.Y.2004).

F.Supp. 1014, 1020 (E.D.N.Y.1996).  In the instant case, the prior course of dealing between the

parties, the custom and practice in the industry, as well as the negotiations between the parties –

both before and after execution of the Contract – prevents Plaintiff from having any cognizable

claim for breach of contract.  This Court may review all of these elements due to the ambiguity

contained in the Contract, and the fact that the Contract does not contain a merger clause.

1.      No Valid Contract Was Formed Between the Parties

There can be no breach of contract where the purported agreement is vitiated by a failure

of the parties to have a meeting of the minds concerning essential elements of the alleged deal.

"If there is no meeting of the minds on all essential terms, there is no contract. This is because an

enforceable contract requires mutual assent to the essential terms and conditions thereof." *Schurr*

*v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 576 (2d Cir.1983).  To determine whether such

a meeting of the minds occurred, the court must find "a manifestation of mutual assent

sufficiently definite to assure that the parties are truly in agreement with respect to all material

terms."  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir.2007).

Only the objective conduct of the parties is relevant; the "[p]rivate, subjective intent, however, is

not material to whether a binding agreement existed." *Reilly v. Reem Contracting Corp.*, 380 F.

App'x 16, 19 (2d Cir.2010).

In the instant case, the Court may be tempted to a meeting of the minds based on the

existence of a fully executed written agreement.  However, a written agreement by itself is not

necessarily evidence of a meeting of the minds.  This is particularly true where as here, the

parties manifested a lack of mutual assent to the terms reflected in the written agreement at or

about the time of execution, *Schurr*, 719 F.2d at 571, or the parties or their principals

acknowledged the lack of a meeting of the minds. *Fragin v. Mezei*, 2012 WL 489100 (S.D.N.Y.

Feb. 14, 2012) (09-cv-10287).  Mondella's near-immediate repudiation of the terms of the

Contract within days of its delivery to Shoreline, and his sworn deposition testimony about the

lack of concurrence on material terms, is objective proof that there was no meeting of the minds.

Accordingly, the Contract is a nullity.

2.     Dell's Did Not Perform Its Obligations Under the Contract

        Even if the Court believes a valid contract was formed, Dell's is unable to seek recovery

under its terms because of its bad faith conduct throughout the Contract period.  In New York,

every party to a contract has an affirmative obligation to comply with the terms of the agreement.

*McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188 (2d Cir.1995).

Therefore, a party "that seeks to recover damages from another party for breach of contract must

show that it itself is free from fault in respect to performance." *Gen. Ins. Co. of Am. v. K.*

*Capolino Const. Corp.*, 983 F. Supp. 403, 424 (S.D.N.Y.1997); *K.M.L. Laboratories Ltd. v.*

*Hopper*, 830 F. Supp. 159, 169 n.5 (E.D.N.Y.1993).  A party that fails to perform under the

disputed agreement may not have any recovery from another party to the contract for an alleged

breach.

        In the instant case, Dell's breached the Contract in multiple material respects.  The

documentary evidence submitted herewith establishes beyond any reasonable doubt that not only

did Dell's fail to provide Shoreline with the necessary containers to ship the cherries – despite

repeated demands for containers by Shoreline – but Dell's insisted on numerous price reductions

throughout the Contract period.  It also refused to take delivery of ten loads per month as

specified in the Contract, instead providing purchase orders for a mere fifty loads eleven months

into the one year term.  Furthermore, Dell's took unilateral deductions from payments owed to

Shoreline, failed to make payment to Shoreline within the thirty-day payment period, and

- 9 -

repeatedly exceeded the $130,000.00 credit limit specified in the Contract. Accordingly, Dell's failed to fully perform under the Contract, and may not recover from Shoreline for any alleged breach.

3.    Shoreline Fulfilled All of Its Obligations Under the Contract

In contrast to Dell's bad faith, Shoreline went out of its way to work with Dell's to fulfill its obligations under the Contract. Shoreline had up to ten loads of cherries set aside for Dell's at all times during the Contract period, prepared loads for export at Dell's request, consented to price reductions when Dell's insisted, and attempted to maximize the number of loads available to Dell's during the harvest period. Despite these measures, Dell's refused to take anywhere near ten loads per month for the first eleven months of the contract period, and then insisted on receiving fifty-four loads in the last month. Such unreasonable conduct rendered performance by Shoreline impossible, excusing Shoreline from performance at that time. For the first eleven months of the Contract period – prior to Dell's last and most egregious breach – Shoreline was in full compliance with its obligations under the Contract.

   *i.    Shoreline Tendered Cherries in Brine to Dell's As Required by the Contract*

Dell's breach of contract cause of action alleges that Shoreline's sole breach was its failure to "sell and ship" the loads of Cherries to Dell's. However, Dell's admits that Shoreline had no obligation to ship any loads to Dell's, and that Dell's was responsible for shipping. *See,* Exhibit O, ¶¶ 17-26. ("SFG did not "ship" the loads. SFG made them available for pickup.") This is consistent with Shoreline's obligations under the Contract which specified that the shipping terms were F.O.B. Kewadin, Michigan and that plaintiff was to supply containers for transport. Under those terms, Dell's was responsible for having its carrier ship the cherries from defendant, Great Lakes. NY UCC § 2-319; *see also,* 7 C.F.R. § 46.43(i). Since Shoreline had no

- 10 -

obligation to ship any loads to Dells, it can have no liability to Dell's for failure to do so. Therefore, at best, Dell's could only have any recovery on this claim if Shoreline is deemed to have refused to <u>sell</u> the cherries to Dell's.

Under the UCC as adopted in New York, a seller's tender of goods triggers a buyer's duty to accept the goods and pay for them. NY UCC § 2-507. This is in all respects a "sale" as defined by the UCC, NY UCC § 2-106, without the transfer of title. Of course, where the goods are F.O.B. place of shipment, title cannot transfer unless the buyer honors its end of the exchange by arranging to have its carrier take delivery of the goods. NY UCC § 2-401(2). Accordingly, on a transaction that is F.O.B. place of shipment, tender of goods is tantamount to a sale.

"Tender of delivery under New York Uniform Commercial Code requires seller to put and hold conforming goods at buyer's disposition and give buyer any notification reasonably necessary to enable buyer to take delivery." *Allied Semi-Conductors Int'l, Ltd. v. Pulsar Components Int'l, Inc.*, 907 F. Supp. 618 (E.D.N.Y. 1995) (citing NY UCC § 2–507), *see also, Parkwood Lumber, Inc. v. Rivisco, Inc.*, 205 F.3d 1324 (2d Cir.2000). As set forth more fully in the accompanying affidavit of Dean Veliquette, and established by the documentary evidence annexed thereto, Shoreline had up to ten loads of cherries set aside for Dell's at all times during the Contract period. Shoreline also provided Plaintiff ample notice of the availability of the goods. Since Shoreline tendered, it is deemed to have been ready, willing and able to sell the goods to Dell's.[3] Rather than pick up the ten loads per month of produce from Shoreline at the contracted-for price of $0.49 per pound, Dell's admittedly filled its warehouse with cheaper produce from Shoreline's competitors. Plaintiff's refusal to take the loads specified in the

---

[3] Dell's failure to pick up the goods entitles Shoreline to relief under the UCC, Sections 2-703 and 2-708, and constitutes unlawful conduct under Section 2 of the PACA, entitling Shoreline to judgment against Dell's on a portion of Shoreline's counterclaims herein, addressed *infra*.

- 11 -

Contract, and to buy elsewhere for less, was at its own risk.  Accordingly, Dell's breach of contract claim must fail.

This Court should not countenance Dell's decision to buy cherries elsewhere and not honor its written commitment to Shoreline when the opportunity to purchase cherries at lower prices arose.  Nor should the Court give its imprimatur to Dell's subsequent decision to bully Shoreline into providing fifty-four loads of cherries, a commercial impossibility, when prices soared and Dell's realized its surreptitious purchases from third parties were at prices higher than set forth in the Contract it had previously chosen to ignore.

    *ii.*    *Shoreline's Performance was Excused*

Pursuant to NY UCC § 2-615, a seller's non-delivery of goods, in whole or in part, does not constitute a breach "if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made."  *Id.*  A seller's performance in such circumstances may be excused if it timely notified its customers of the possibility of non-delivery, *Cliffstar Corp. v. Riverbend Products, Inc.*, 750 F. Supp. 81 (W.D.N.Y.1990), and if delivery of a portion of the product is possible, it must employ "a fair and reasonable allocation system among its customers if there is less product than the customers would like to have." *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 2002 WL 413808 at *39  (S.D.N.Y. Mar. 18, 2002) (98-cv-5566).

In the instant case, Shoreline satisfied all of the prerequisites of UCC § 2-615.  Warm weather, followed by a freeze, unexpectedly reduced the cherry yield for the 2010 harvest.  As early as April 1, 2010, Shoreline spoke with its customers, including Dell's, to express concerns about the possibility of a small harvest.  The purpose of these calls was to determine the requirements of Shoreline's customers so that deliveries could be allocated among its customers

- 12 -

in a fair and reasonable manner.  Defendant obtained assurances from Dell's that it would only need thirty-five more loads for the balance of the Contract period.  Shoreline ultimately delivered thirty-four of the thirty-five loads Dell's said it would need, and could have delivered more had Dell's taken delivery of the agreed-upon average of ten loads per month in April, May and July. Accordingly, Shoreline's performance under the Contract was excused as contemplated by the UCC.

Similarly, Shoreline was excused from any obligation to satisfy Dell's fifty-four purchase orders in the last twenty-four days of the Contract period because Dell's knew, based on the parties prior course of dealings, that Shoreline, a small farmer's cooperative, did not have the capacity to fulfill so many orders in such a short period of time.  Dell's attempt to overwhelm Shoreline's limited storage and processing capacity succeeded preventing Shoreline from fulfilling its obligations under the Contract.  *Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co.*, 79 N.Y.2d 801, 803 (1991) ("in every contract there is an implied undertaking on the part of each party that it will not do anything to prevent the other party from carrying out the agreement on its part") (internal citation and punctuation omitted).  In any event, the fifty-three last minute orders, if fulfilled, would have put Plaintiff hundreds of thousands of dollars over its contractual $130,000.00 credit limit.  Standing alone, that excuse any obligation Shoreline might have had to fulfill the orders.

Based on the prevailing law as set forth above, there are no material facts that would preclude this Court from entering judgment dismissing plaintiff's breach of contract claim. Critically, since the balance of plaintiff's claims are based on the existence of a contract it alleges was breached by Shoreline, if Shoreline prevails on this cause of action, then the entirety of Dell's case must be dismissed.

## C.   Plaintiff Is Not Entitled to any Recovery Pursuant to UCC §§ 2-711, 2-712 and 2-715

In the absence of a contract, or any breach thereof, Defendants have no liability to Dell's

for the cost of cover or consequential damages.  Even if the Court believes there was a valid

contract between the parties, Dell's demand for such relief still fails based on a plain reading of

the terms of the Uniform Commercial Code as adopted in New York.  Pursuant to NY UCC § 2-

711, "where a seller fails to make delivery ... then ... the buyer may ... "cover" [under section

2-712] ...; or recover damages for non-delivery [under section 2-713[4]]." *Id.* NY UCC § 2-712

allows a buyer to "purchase goods in substitution for those due from the seller," and then

"recover from the seller as damages the difference between the cost of cover and the contract

price together with any incidental or consequential damages." *Id.*.  Critically however, a buyer

may only cover by making "good faith" and "reasonable" purchases of substitute goods "without

unreasonable delay." *Id.*  In the instant case, the cover cherries plaintiff alleges it purchased fail

to satisfy any of these three prerequisites.

## 1.   Plaintiff's Purported Cover Purchases Were Made in Bad Faith

As a preliminary matter, Dell's had not sent Shoreline any purchase orders for the

balance of the loads to be delivered under the Contract until August 11, 2010, when less than one

month remained in the Contract period.  Based on their prior course of dealing, Dell's knew, or

should have known, that Shoreline could not fulfill fifty-four purchase orders in twenty-four days

– either logistically, or under the $130,000.00 credit limit imposed by the Contract.  Even if such

heavy barriers were not in place, Mondella told Veliquette on April 1, 2010, six months into the

Contract, that Dell's would only be taking delivery of thirty-five more loads, thirty-four of which

---

[4] Notably, plaintiff has not sought relief under § 2-713, which measures damages as the difference between market price and the contract price.  This tactic is indicative of plaintiff's bad faith, since plaintiff is well aware that the market rate was far less than its alleged cover price.

were delivered. Accordingly, any purchase of cherries from a source other than Shoreline for the purported purpose of cover was done in bad faith.

Furthermore, Plaintiff alleges that all of the cover cherries it purchased came from a company in Bulgaria named Kuminiano Fruit Ltd., and that it paid $1.02 per pound delivered. However, plaintiff's own documents reveal that in the period after September 13, 2010 (the date of Shoreline's last delivery to Dell's), Dell's was purchasing cherries from sources other than Kuminiano for as low as $0.53 per pound. The average price Dell's paid for cherries between September 16, 2010 and March 18, 2011 was $0.70 per pound. Accordingly, Dell's paid far more for the alleged cover cherries than the prevailing market rates. Assuming, *arguendo*, that Dell's bought the Kuminiano cherries anticipating that Shoreline would be responsible for Dell's cost of cover, such a purchase was made in bad faith.

2.      Plaintiff's Purchase of Cherries at $1.02 per Pound Was Not Reasonable

In light of the prevailing market prices for comparable cherries, it was unreasonable for Dell's to pay $1.02 per pound and expect Shoreline to cover the difference. In addition, several of the invoices produced by plaintiff for purported cover cherries indicate that the cherries are "Plain Cherries." This is the highest grade of cherry, with the stem on. Since the cherries delivered by Shoreline to Dell's were not plain cherries, but packer grade cherries with the stem off, it was unreasonable for Dell's to purchase plain cherries with which to cover.

3.      Plaintiff's Purported Cover Purchases Were Not Made Without Unreasonable Delay

Dell's knew the Contract term would expire on or about September 3, 2010, meaning that it would need to take delivery of all 100 loads of cherries from Shoreline by that date. It sent Shoreline fifty-four purchase orders for cherries on August 11, 2010, presumably expecting to receive all fifty-four loads before September 3, 2010. However, Dell's own documents reveal

- 15 -

that between August 11, 2010 and September 13, 2010, Shoreline was its only source for

cherries. After September 13, 2010, presumably the period when Dell's needed the additional

fifty-four loads of fruit, its purchases of cherries from other sources was sporadic at best. Dell's

only purchased thirty-two loads of cherries between September 13, 2010 and the end of that year.

Of those purchases, only fourteen were from the exorbitantly-priced Kuminiano in Bulgaria, and

in the eight months following the expiration of the Contract, those were the only loads Dell's

bought from Kuminiano. All the rest were purchased from other sources for prices far below

\$1.02 per pound. Accordingly, Dell's purported cover purchases were also untimely.

4.    Dell's Is Ineligible for Incidental or Consequential Damages

Dell's purchases of cover cherries were made in bad faith, unreasonably and untimely.

Accordingly, Defendants must be deemed to have no liability to Dell's for its alleged cost of

cover. In addition, Defendants cannot be held liable for any incidental or consequential expenses

Dell's may have incurred. Pursuant to NY UCC § 2-715, only "commercially reasonable

charges, expenses or commissions [incurred] in connection with effecting cover" may be

recovered. *Id.* For the reasons set forth above, Dell's cover was not commercially reasonable,

and therefore incidental damages must be disallowed. Similarly, because Dell's has not alleged

any consequential damages of the type allowed by NY UCC § 2-715, it is not entitled to any

recovery. Although Dell's expert alleged that Dell's needed the cherries to fulfill a contract with

the Aldi supermarket chain, Arthur Mondella testified at his deposition that he never made

Shoreline aware of the Aldi contract and no proof of the Aldi contract was ever turned over in

discovery. (AM TI, p. 135, ll. 11-14.) Based on the foregoing, all of Dell's demands for relief

pursuant to the Uniform Commercial Code are without merit.

- 16 -

## D. Breach of Covenant of Good Faith and Fair Dealing

While New York generally recognizes the existence of an implied covenant of good faith

and fair dealing, a breach of the covenant is merely deemed to be a breach of the underlying

contract. *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052 (2d Cir.1992).

Therefore, a breach of the implied covenant is not recognized as a distinct cause of action, and is

routinely dismissed in any action which also includes a separate breach of contract claim. *Harris*

*v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 84 (2d Cir.2002); *ICD Holdings S.A. v. Frankel*,

976 F. Supp. 234, 243-44 (S.D.N.Y.1997) ("A claim for breach of the implied covenant will be

dismissed as redundant where the conduct allegedly violating the implied covenant is also the

predicate for breach of covenant of an express provision of the underlying contract.") (internal

citation omitted); *Obex Sec., LLC v. Healthzone Ltd.*, 2011 WL 710608 (S.D.N.Y., Feb. 28,

2011) (10-cv-6876-SAS).

In the instant case, plaintiff's cause of action for breach of the implied covenant and its

cause of action for breach of contract are predicated on identical grounds; to wit, Shoreline's

alleged failure to sell and ship cherries to Dell's. Since these claims are redundant, this cause of

action must be dismissed as a matter of law.

## E. Violation of 7 U.S.C. § 499b

7 U.S.C. § 499b, Section 2 of the Perishable Agricultural Commodities Act, 7 U.S.C. §

499a *et seq.* (the "PACA"), has been described by the First Circuit as being "passed primarily to

eliminate unfair practices in the marketing of perishable agricultural commodities in interstate

commerce in the case of a declining market by making it difficult for unscrupulous persons to

take advantage of shippers by wrongful rejection of the goods." *Joseph Martinelli & Co. v.*

*Simon Siegel Co.*, 176 F.2d 98, 100 (1st Cir.1949). Congress sought to prevent a purchaser like

Dell's from being able to reject contracted-for goods when the market price falls below what a buyer has agreed to pay.  In other words, the legislative intent of the statute is to prevent purchasers likes Dell's from engaging in precisely the type of conduct which the record proves they engaged in.  The evidence submitted herewith establishes that Dell's refused to pick up loads that had been tendered by Shoreline because it was purchasing loads from Shoreline's competitors at cheaper prices, filling its warehouses beyond capacity.  As discussed more fully *infra*, Shoreline is entitled to judgment against Dell's on this basis.

Paradoxically, and despite the clear legislative intent of the statute, Dell's has attempted to use this section of the Code as a sword rather than a shield.  It has alleged that Shoreline engaged in unfair conduct in violation of the PACA by "failing to deliver the Loads, without reasonable cause."  As set forth more fully, *supra* at II.B.3.i, Shoreline had no obligation to ship or deliver any loads to Dell's both because the shipping terms were F.O.B. shipping point, 7 C.F.R. § 46.43(i), and because Plaintiff exceeded its credit limit.  Giving plaintiff's claim the most favorable intendment, that claim still must fail because at all times during the Contract period, Shoreline had up to ten loads of cherries set aside for Dell's, which tender Dell's rejected.  The loads were ready and available to be picked up, and Dell's had notice of this fact.  Its failure to take delivery was not on account of any unfair conduct by Shoreline.

With regard to Dell's fifty-four purchase orders, Shoreline was excused from performance as set forth supra at II.B.3.ii.[5]  Accordingly, Dell's attempt to obtain any recovery for the alleged violation of Section 2 of the PACA is contrary to the legislative intent of the statute, inapposite to the facts of this case, and must be denied as a matter of law.

---

[5] The UCC applies to sales of produce under PACA where the statute is silent as to a material part of the transaction at issue." *Tray-Wrap, Inc. v. Meyer*, 1994 WL 710804 at *4 (S.D.N.Y. Dec. 20, 1994) (90-cv-7688), *aff'd* 71 F.3d 404 (2d Cir1995).

## F.     Tortious Interference With Contract or Prospective Economic Advantage

Although Dell's complaint seems to allege tortious interference with prospective

economic advantage, it has admitted that it is actually alleging tortious interference with

contract. Plaintiff purports to reserve the right to claim interference with prospective economic

advantage if "Defendants contend that the Contract was not valid and/or enforceable." (Exhibit

O, ¶ 41.) Notwithstanding the absurdity of this position, Dell's can point to no evidence to

support a claim for either cause of action.

1.     Dell's Has No Claim for Tortious Interference with Contract

To establish tortious interference with contract, Dell's must prove "the existence of a

valid contract between the plaintiff and a third party, defendant's knowledge of that contract,

defendant's intentional procurement of the third-party's breach of the contract without

justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co.

v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). The alleged interference "must be intentional,

not merely negligent or incidental to some other, lawful, purpose." *Alvord & Swift v. Stewart M.

Muller Const. Co., Inc.*, 46 N.Y.2d 276, 281 (1978). Accordingly, economic interest, by itself,

may constitute a defense to the alleged interference. *Foster v. Churchill*, 87 N.Y.2d 744 (1996).

As set forth above, there was no valid contract between Dell's and Shoreline based on the

lack of a meeting of the minds. (See discussion *supra* at II.B.1.) The existence of a contract is

"a central requirement for this cause of action under New York law," *Scutti Enterprises, LLC. v.

Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir.2003). Without one, such a claim is doomed

to failure. Even if there was a valid contract, Shoreline has established above that it did not

breach the contract. (II.B.3.)

- 19 -

A further insurmountable barrier to Dell's tortious interference claim is the absence of any evidence supporting it. Dell's is obligated to point to a specific "document, conversation, or communication that would allow an inference of tortious interference." *Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 67 (2d Cir.2010). There are no documents or communications to satisfy this burden. Because plaintiff can muster only conclusory allegations, its intentional tort cause of action must also be dismissed and never should have been brought.

Even if Dell's were permitted to adduce evidence not produced in discovery to establish interference by Cherry Ke, Cherries R Us or Great Lakes with the Contract, each of them has a defense under the economic interest defense. Under that defense, a third party is justified in bringing about a breach of contract "to protect its own legal or financial stake in the breaching party's business." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). In the instant case, Great Lakes performed brining, processing and storage services almost exclusively for Shoreline. Similarly, Shoreline was Cherries R Us' sole purchaser of its raw sweet cherries. Based on these relationships, the Defendants would, in theory, be justified in bringing about a breach of the Contract. After all, if Dell's were permitted to force Shoreline to deliver fifty-four purchase orders in one month, Great Lakes would be forced to work day and night, and run it's machinery and employees to the brink of ruin and exhaustion, if it had any hope, however false, of fulfilling those orders. Similarly, Cherries R Us would have been forced to allow Shoreline to use the more expensive 2010 harvest with which to satisfy Dell's purchase of cherries from the $0.49 per pound crop of 2009. Such an outcome would be financially ruinous to those companies, justifying any alleged interference with the Contract. *See gen.*, *Don King Productions, Inc. v. Smith*, 47 F. App'x 12, 15 (2d Cir.2002). Accordingly, even if those

companies can be deemed to have interfered with the Contract, which they did not, they were justified in doing so.

2.      Dell's Has No Claim for Tortious Interference with Prospective Economic Advantage

Under Dell's reasoning, because Defendants dispute the validity and enforceability of the Contract, they must also explain why Dell's should be precluded from any recovery under a theory of tortious interference with prospective economic advantage. To state such a claim "the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir.2006).

Assuming *arguendo* that Plaintiff can establish the first, second and fourth elements of the claim, which it cannot, there is no reasonable dispute that Dell's cannot establish that Cherry Ke, Cherries R Us or Great Lakes acted solely out of malice, or used improper means. Plaintiff bears the burden of proving that Defendants' motive is solely malicious. *Argilus, LLC v. PNC Fin. Services Group, Inc.*, 419 F. App'x 115, 120 (2d Cir.2011). There is nothing in the record on which Dell's can rely to prove this critical element.

Dell's attempts to argue that Shoreline's alleged breach of 7 U.S.C. § 499b satisfies the improper means analysis, but this is misguided. The alleged improper conduct must by itself be actually unlawful, not merely result in conduct which is unlawful. At the risk of stating the obvious, it is not a violation of section 499b to cause a third party to refuse to deliver produce. Even if that were not the case, plaintiff cannot point to a single shred of evidence to prove that any of the Defendants acted with the sole purpose of harming plaintiff. Dell's tortious interference claims are predicated on nothing other than surmise, or at worst, a belief that forcing

- 21 -

Cherry Ke, Cherries R Us and Great Lakes to litigate would somehow bring Shoreline to its knees.

The allegations contained in plaintiff's second amended complaint suggest that the primary motivations for the tortious interference were "to maximize their own profit," Exhibit D at ¶¶ 25-26, to "inflate the price of Maraschino Cherries," Exhibit D at ¶¶ 34, and to "harm the Hubbell companies and Dell's." Exhibit D at ¶¶ 33. Plaintiff cannot have it both ways. Either the Defendants acted with the sole purpose of harming plaintiff, or not. More importantly, it is well-established that conduct "undertaken to economically benefit defendants and not solely based on malice toward the plaintiff does not amount to tortious interference with business relations." *Anderson News, L.L.C. v. Am. Media, Inc.*, 732 F. Supp. 2d 389, 404 (S.D.N.Y.2010). Based on the allegations in the second amended complaint, as well as the complete lack of evidence to even suggest that the Defendants acted solely for the purpose of harming Dell's, there can be no doubt that they cannot be found liable for tortious interference.

Based on the foregoing, no rational juror could conclude that Dell's cause of action for tortious interference, whether with contract or with prospective economic advantage, has any merit. It must therefore be dismissed.

### G.    Conspiracy

Plaintiff's proposed cause of action for conspiracy must also fail. New York does not recognize a separate cause of action for conspiracy. *Kirch*, 449 F.3d at 388. Furthermore, since Dell's claim for tortious interference is meritless, its claim for conspiracy is improper as well. *Pandozy v. Tobey*, 335 Fed.Appx. 89 (2d Cir.2009).

To prove a conspiracy, plaintiff must show a corrupt agreement, an overt act in furtherance of that agreement, and membership in the conspiracy by each defendant. *Cofacredit,*

- 22 -

*S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 240 (2d Cir.1999). Plaintiff has failed

to allege or provide any documentary evidence to demonstrate the existence of a corrupt

agreement, much less any overt act taken by any of the defendants in furtherance of such an

agreement. Accordingly, plaintiff must be denied any relief under this cause of action.

### H.    Shoreline is Entitled to Summary Judgment on Its Counterclaims

Shoreline has alleged two counterclaims against Plaintiff, breach of contract and violation

of 7 U.S.C. § 499b(2), and is entitled to damages on these claims as set forth in the

accompanying Veliquette affidavit.

1.    Dell's Breached the Contract in Numerous Respects

As discussed *supra* at II.B., Shoreline has established the existence of a contract,

performance by Shoreline, failure of performance by Dell's and that it suffered damages as a

result of Dell's breach. *Johnson*, 660 F.3d at 142. While Shoreline challenges the validity of the

Contract, in the event the Court believes a valid and enforceable agreement was formed,

Shoreline has set forth above the ways in which Shoreline performed its obligations thereunder,

while Dell's repeatedly breached. A thorough analysis of this claim requires an understanding of

the prior course of dealings between the parties. *New York Marine & Gen. Ins. Co.*, 599 F.3d at

119.

As set forth more fully in the accompanying Veliquette affidavit, the parties had done

business for at least fifteen years prior to entering into the Contract. It was only their second

written agreement in all that time. In all other transactions, the parties entered into oral

agreements that were modified at will. Notably, Dell's also purchased cherries from other

Michigan cherry suppliers and had prior knowledge that Shoreline, and other Michigan vendors,

ceased processing cherries during the harvest. Dell's also knew Shoreline had limited storage

- 23 -

and processing capabilities. Accordingly, Dell's failure to take loads through the Contract period was not only contrary to its own interest, but a breach of the express terms of the written Contract.

Similarly, Dell's knew the expense associated with providing bins, yet failed to provide Shoreline with the bins necessary to prepare its loads for shipment. Despite repeated demands by Shoreline, Dell's consistently failed to uphold this provision of the Contract. In addition, despite getting a record low price from Shoreline for a huge volume of cherries, Dell's insisted on price reductions throughout the Contract period. In exchange for the reductions, the record shows that Dell's promised to pay return freight on the empty bins Dell's returned to Shoreline. Despite these assurances, Dell's never paid those bills.

Finally, Dell's failed to tender payment to Shoreline as obligated under the Contract, ultimately withholding certain payments, and taking unilateral deductions on invoices. On top of this, Dell's failed to remit payment in many instances within the thirty days specified in the payment terms, and exceeded the $130,000.00 credit limit established by the Contract. Notably, this credit limit vitiated any obligation of Shoreline to comply with Dell's fifty-four purchase orders issued on August 11, 2010.

In light of these repeated and flagrant breaches of the letter of the Contract, as well as being deviations from the custom and practice in the industry and the prior course of dealing between the parties, Shoreline is entitled to judgment against Dell's in the amount of $32,259.00 as demanded in the complaint.

2.      Dell's Violated PACA by Refusing to Take Delivery of the Loads Tendered by Shoreline

As discussed *supra* at II.E., Section 2 of the PACA was promulgated to protect sellers from the unscrupulous practices of buyers. *Joseph Martinelli & Co.*, 176 F.2d at 100.

- 24 -

Accordingly, Shoreline is entitled to damages against Dell's for that company's unjustified rejection of loads Shoreline had tendered in the usual course of business. While Section 499b expressly refers to unreasonable "rejection", the Secretary of the USDA, in promulgating regulations interpreting the PACA, has established that a purchaser can be deemed to have rejected produce without reasonable cause merely by "indicating an intention not to accept produce through an act or failure to act inconsistent with the contract." 7 CFR § 46.2(bb). In other words, Dell's did not have to explicitly "reject" loads tendered by Shoreline in order to fall afoul of the PACA. So long as Dell's "indicated an intention" not to take delivery of the loads Shoreline had set aside for it, Dell's can be deemed to have violated the statute. That intention is manifest from plaintiff failing to order ten loads per month as required by the Contract, and expressly informing Shoreline in April, 2010 that it would only order thirty-five loads for the balance of the Contract, although it was obligated to accept sixty-nine more loads.

Because Shoreline incurred fees associated with storing the loads Dell's unreasonably rejected, it is entitled to damages in an amount of $5,323.80.

I.     **Shoreline Is Entitled to Interest at the Rate of 18%** *per annum* **and Attorneys' Fees**

In addition to the foregoing damages, Shoreline is entitled to recover from Dell's interest and attorneys' fees. Even though the Contract itself is silent on the matter, there is still an enforceable agreement between the parties which requires Dell's to pay Shoreline interest at the rate of eighteen percent *per annum* plus attorneys' fees. Each of the invoices sent to plaintiff provides for interest to accrue at a rate of 1.5% per month on past due accounts. In addition, the invoices state that Shoreline can recover attorneys' fees from Dell's incurred in connection with collecting "any balance due hereunder." Dell's has never disputed receiving Shoreline's invoices and it has never alleged that it rejected any of the invoices it received from Shoreline.

- 25 -

In addition, Dell's president admitted that he reviewed those invoices (AM TII, p. 312, ll. 12-21), and his company is bound by their terms.

It is well-established that as between merchants, invoices are deemed contracts unless rejected. NY UCC § 2-201; *Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 384 (S.D.N.Y. 2005); *Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc.*, 2005 WL 1149774 at *3 (S.D.N.Y., May 16, 2005) (04-cv-2666) ("As between merchants, inclusion of terms in the seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of the contract"); *Polygram, S.A. v. 32-03 Enterprises, Inc.*, 697 F.Supp. 132 (E.D.N.Y.1988); *see also*, *Middle Mountain Land and Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220, 1225-26 (9th Cir.2002); *Reds Market v. Cape Canaveral Cruise Line, Inc.*, 181 F.Supp.2d 1339 (M.D.Fla.2002). Accordingly, because interest and attorneys' fees are part of the terms of the sale, Shoreline is entitled to an award of contractual interest and attorneys' fees against Dell's in an amount to be determined either upon further papers or at inquest.

Furthermore, at oral argument on Dell's motion to amend the complaint to include Cherry Ke, Cherrie R Us, and Great Lakes as defendants in this case, it was suggested by Magistrate Judge Reyes that if it were ultimately concluded that a party brought into the litigation through the amended complaint was later determined not to be a proper party, then that party would be entitled to recover attorneys' fees. (Docket No. 38, pp. 18-19.) Therefore, if this Court enters judgment in favor of Cherry Ke, Cherries R Us or Great Lakes because the tortious interference and conspiracy claims have no merit, it is respectfully submitted that they be awarded the fees and costs associated with their defense of this action.

## III.   CONCLUSION

For all of the foregoing reasons, Defendants are entitled to the entry of an order dismissing Dell's complaint in its entirety, granting Shoreline judgment against Dell's on its counterclaims, including an award of interest at the rate of 18% *per annum* plus attorneys' fees, and awarding Defendants such other and further relief as the Court deems just and proper.

Dated: New York, New York
      March 30, 2012

                              Respectfully submitted,
                              Law Offices of Bruce Levinson
                              Attorneys for Defendants

By:           _____

                              Gregory Brown
                              747 Third Avenue, Fourth Floor
                              New York, New York 10017-2803
                              (212) 750-9898