UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
DELL'S MARASCHINO CHERRIES CO., INC.,

                                         Case No. 10-cv-3789 (ILG) (RER)

                Plaintiff,


        - against -


SHORELINE FRUIT GROWERS, INC.,
CHERRIE KE, INC., CHERRIES R-US, INC.
and GREAT LAKES PACKING CO.,

                Defendants.

--------------------------------------------------------------------X


## **MEMORANDUM OF LAW IN OPPOSITION TO**
## **<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**


Law Offices of Bruce Levinson
Attorneys for Defendants
747 Third Avenue, Fourth Floor
New York, New York 10017-2803
(212) 750-9898

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ii

I.   BACKGROUND   ...........................................................................................1

II.  ARGUMENT   ................................................................................................3

     A.   Standard of Review..............................................................................3

     B.   Shoreline's Conduct During the Contract Period Was
          Commercially Reasonable ...................................................................5

          1.   Shoreline Did Not Breach the Contract ......................................6

               i.    Shoreline Did Not Waive Express Contract Provisions .............8

               ii.   The Contract Should Not Be Construed Against Shoreline.........10

          2.   Shoreline Had a Right to Cancel the Contract ........................11

               i.    Breach of Installment Contract ...................................................11

               ii.   Impracticability of Performance .................................................13

     C.   Shoreline's Conduct Does Not Violation Section 2 of the PACA......................14

     D.   Shoreline Is Entitled to Relief On Its Counterclaims...........................................16

III. CONCLUSION   .........................................................................................17

i

## **TABLE OF AUTHORITIES**

U.S. SUPREME COURT

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..........................................................4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...........................4

U.S. COURT OF APPEALS

*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199 (2d Cir.2009)......................................4

*Giannullo v. City of New York*, 322 F.3d 139 (2d Cir.2003) ...............................................4

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257 (5th Cir.1991)........................4

*Johnson v. Nextel Communications, Inc.*, 660 F.3d 131 (2d Cir.2011) ................................6

*Joseph Martinelli & Co. v. Simon Siegel Co.*, 176 F.2d 98 (1st Cir.1949)..........................15

*Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986) ..........................................3

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir.2010) .....10

*Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79 (2d Cir.2004) ....................................4

*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir.2008)..........................................................4

*Schering Corp. v. Home Ins. Co.*, 712 F.2d 4 (2d Cir.1983) ...............................................10

*Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571 (2d Cir.1983) .............................6

*SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Properties, LLC*,
    467 F.3d 107 (2d Cir.2006)..........................................................................................10

*U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*, 949 F.2d 569 (2d Cir.1991)........................11

*US Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465 (9th Cir.1994)...............................4

*Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680 (2d Cir.1983)........8

U.S. DISTRICT COURTS

*Cliffstar Corp. v. Riverbend Products, Inc.*, 750 F. Supp. 81 (W.D.N.Y.1990)....................13

*Petroleo Brasileiro S.A., Petrobras v. IBE Group, Inc.*,
    1995 WL 326502 (S.D.N.Y., May 31, 1995) (93-cv-3305) .....................................12

*Point Developers, Inc. v. F.D.I.C.*, 921 F.Supp. 1014 (E.D.N.Y.1996) ...............................10

*Subaru Distrib. Corp. v. Subaru of Am., Inc.*,
    2002 WL 413808  (S.D.N.Y. Mar. 18, 2002) (98-cv-5566) ....................................13

N.Y. COURT OF APPEALS

*Alsens Am. Portland Cement Works v. Degnon Contracting Co.*, 222 N.Y. 34 (1917) ........9

*Laba v. Carey*, 29 N.Y.2d 302 (1971) ...............................................................................8

*Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175 (1982)................9

*Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co.*, 79 N.Y.2d 801 (1991) ..........13

N.Y. APPELLATE DIVISION

*Columbia Wax Products Co. v. Indian Ref. Co.*, 184 A.D. 250 (1st Dept.1918) .................13

*Mercer Tube & Mfg. Co. v. Am. Zinc Sales Co.*, 258 A.D. 506 (1st Dept.1940) .................12

*Nostane Products Corp. v. Chas. L. Huisking & Co.*, 262 A.D. 754 (2d Dept.1941) ..........8

N.Y. APPELLATE TERM

*Hebberd v. American Sheet Metal Lath Co.*, 90 Misc. 350 (App.Term., 1st Dept.1915)......8

STATUTES

7 U.S.C. § 499a .................................................................................................3

7 U.S.C. § 499b ...........................................................................................14, 15

7 U.S.C. § 499e ...............................................................................................16

Fed. R. Civ. P. 56.............................................................................................4

NY UCC § 2-209 ..........................................................................................9, 10

NY UCC § 2-612 .............................................................................................11

NY UCC § 2-615 .............................................................................................13


TREATISES

Restatement 2d of Contracts ...........................................................................10

Defendants, Shoreline Fruit Growers, Inc. ("Shoreline"), Cherry Ke, Inc. i/s/h/a Cherrie Ke, Inc. ("Cherry Ke"), Cherries R Us, Inc. i/s/h/a Cherries R-Us, Inc. ("Cherries R Us") and Great Lakes Packing Co. ("Great Lakes") (collectively, "Defendants"), submit this memorandum of law in opposition to the motion for partial summary judgment brought by plaintiff, Dell's Maraschino Cherries Co., Inc. ("Dell's" or "Plaintiff").

## I.   BACKGROUND

Plaintiff produces and sells maraschino cherries from its principal place of business located in Brooklyn.  Defendant Shoreline is an agricultural cooperative of Michigan cherry farmers located in Traverse City, Michigan.  Michigan cherry farmers had bumper crops in 2007, 2008 and 2009.  Because of the glut of fruit, brine cherry prices were at or near market lows in July, 2009.  Dell's, looking to maximize its profits, purchased cherries from whatever source it could for as low a price as possible.  Shoreline, looking to make room for the 2009 harvest, wanted to sell as many cherries as possible.

In theory, it seemed like a match.  However, when Shoreline and Dell's entered into a written agreement on July 13, 2009 (the "Contract"), the parties had vastly different expectations, and fundamental misunderstandings about the material terms of the Contract quickly became apparent.  Plaintiff breached almost immediately.  Dell's failed to provide shipping bins, refused to take delivery of approximately ten loads per month, and made multiple requests for price adjustments.  Tension between the parties is reflected in telephone calls, email correspondence and notations on invoices and bills of lading exchanged early on in the Contract period.

Shoreline's brine cherry manager, Dean Veliquette, frequently called Dell's president, Arthur Mondella, to insist that Dell's take the approximately ten loads per month specified under the Contract.  Plaintiff refused.  By April, after complaining for months about a lull in Dell's business, Mondella told Veliquette that Dell's would only need an additional thirty-five loads under the Contract.  It was obligated to buy an additional sixty-nine loads at the time.  Nevertheless, in reliance on Plaintiff's representations, and needing to make room for the 2010 harvest, Shoreline sold some of the product it had set aside for Dell's to its other customers.

Two months later, in June, 2010, it became apparent that the year's harvest would be small, and cherry prices started to climb.  Dell's, fearing that its huge profits were in danger, reversed course and demanded for the first time that Shoreline make available to Dell's all 100 loads of cherries specified in the Contract.  At that point, the Contract price of $0.49 per pound was significantly below market.  However, Dell's already had a glut of cherries, having purchased fruit from Shoreline's competitors during 2009 and 2010 at prices less than $0.49 per pound.  Dell's facilities in Brooklyn were full and it was physically impossible for Plaintiff to take further deliveries as evidenced by both its failure to issue purchase orders to Shoreline and its own internal communications.

In short, Dell's wanted Shoreline to be bound to the Contract Plaintiff had already breached by buying only an average of five loads per month instead of ten, and lock in what amounted to a perpetual right to buy brine cherries at a bargain basement price.  Dell's felt it could disregard the Contract by not purchasing and paying for the fruit when it was obligated, having Defendants act as its free storage facility, then demanding more than half the volume of cherries covered by the Contract in its final days, putting Plaintiff over its credit limit by more than half a million dollars.

On August 11, 2010, with only twenty-four days remaining in the Contract period, Dell's, out of the blue and directly contradicting its earlier representation that it would only take delivery of thirty-five more loads, sent Shoreline fifty-four purchase orders – more than half of the total volume covered by the Contract.  As Plaintiff well knew from its fifteen year history of doing business with Shoreline, Shoreline could not comply with such a huge and unprecedented demand, yet Dell's initiated this lawsuit six days later, alleging that Shoreline's had breached the Contract.

Dell's asks the Court to impose liability on Shoreline for the alleged breach of the Contract and for violation of the non-trust provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq*. (the "PACA").  There is no basis in fact or law for such an outcome. Dell's repeated breaches of the Contract excused Shoreline from performance.  Even if that were not the case, Dell's rendered performance by Shoreline under the Contract impossible or impracticable.  Under either interpretation, Dell's unclean hands prevent it from having any recovery in this action.

For the reasons set forth in the accompanying affidavit of Dean Veliquette and the counter-statement of undisputed facts submitted herewith, and based on the law as set forth below and all of the papers previously submitted in support of Defendants' motion for summary judgment, Plaintiff's motion for partial summary judgment should be denied.

## II.   ARGUMENT

### A.   Standard of Review

If Plaintiff is to prevail on its motion for partial summary judgment, it must prove that there is no genuine dispute as to any material fact, *Knight v. United States Fire Ins. Co.,* 804 F.2d

9, 11 (2d Cir.1986), *cert denied*, 480 U.S. 932 (1987), and that it is entitled to judgment as a matter of law. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir.2009). When the moving party bears the burden of proof on a particular issue, it may discharge its burden by making a *prima facie* showing in support of its position on that issue. *US Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir.1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on the subject claim. *Id.*; *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir.1991).

By contrast, Defendants have a "limited burden of production," *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 84, *op. corrected*, 511 F.3d 238 (2d Cir.2004), albeit one that requires them to "demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial." *Id.* Defendants can satisfy this burden by the submission of "materials in the record, including depositions, documents, ... affidavits or declarations, ... admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56. In parsing the facts presented, the Court must regard as true Defendants' evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must also draw all reasonable inferences in Defendants' favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A fact is material only if, under applicable substantive law, it would affect the outcome of the case, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir.2008) (internal citation omitted). Immaterial allegations which have no bearing on the relevant statutory law should be disregarded by the Court, and the Court is free to independently review the record. *Giannullo v. City of New*

*York*, 322 F.3d 139, 140 (2d Cir.2003).  Accordingly, Dell's eighty-nine paragraph statement of material facts, which contains improper allegations riddled with generalizations in place of specific facts and proffers conclusions without proper or sufficient foundation, should be given limited consideration by the Court.

While Dell's goes to great lengths to portray Shoreline as having refused to deliver cherries to Dell's, nothing could be further from the truth.  Shoreline always had up to ten loads of cherries set aside for Dell's, which, except for two months out of twelve, never took anywhere near ten loads per month.  Plaintiff was too busy filling its warehouse with cherries costing less than $0.49 per pound from Shoreline's competitors.  Only when Dell's realized that market prices would be greater than $0.49 did it precipitously send Shoreline fifty-four purchase orders.  But Dell's knew or should have known based on fifteen years of doing business with Shoreline that Shoreline could not fulfill such a gargantuan demand in the twenty-four days remaining on the Contract.  Furthermore, the Contract expressly limits Plaintiff's credit limit to $130,000.00, in conformity with approximately ten loads per month.  Fifty-four loads in less than one month would have caused Dell's to owe Shoreline $675,000.00.  Accordingly, Plaintiff cannot make a *prima facie* showing of entitlement to summary judgment.  Not only is each of Plaintiff's causes of action bereft of factual support, but Defendants' counterclaims are well-supported by the record.

**B.      Shoreline's Conduct During the Contract Period Was Commercially Reasonable**

The record establishes that Dell's conduct throughout the Contract was contrary to its letter and spirit.  At various times throughout the term, Dell's failed to provide Shoreline with the necessary shipping containers (AM TI, pp. 188-189; Defendants' Exhibit Q), refused to purchase cherries under the Contract unless Shoreline reduced the price (Defendants' Exhibits R and S),

unilaterally took deductions from payments owed to Shoreline (Defendants' <u>Exhibit T)</u>, breached the credit terms (AM TII, p. 313, ll. 8-11; DV TII, pp. 250-256 and 291-294; Defendants' <u>Exhibit U</u>), and failed to take delivery of loads at the rate specified in the Contract because it found better prices elsewhere (AM TII, pp. 102-103; Defendants' <u>Exhibit V</u>).

Under both the UCC and the prevailing case law, this Court must look to the custom and practice in the industry, particularly between these two parties.  Over the course of fifteen years, it was the custom of Plaintiff and Shoreline to make oral modifications to their written agreements based on market conditions as they developed.  (DV TII, pp. 240-241; AM TI, pp. 175-176; Defendants' <u>Exhibit P</u>.)  Under such circumstances, Shoreline's conduct concerning loads covered by the Contract was commercially reasonable and does not render it liable to Dell's.

1.      <u>Shoreline Did Not Breach the Contract</u>

To state a claim for breach of contract, a plaintiff must establish "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 142 (2d Cir.2011).   In the instant action, Dell's cannot prove its *prima facie* case because it is unable to prove that (i) a valid contract was formed, (ii) that Dell's performed its obligations under the Contract, (iii) that Shoreline failed to perform, and (iv) that it suffered any damages.

As set forth more fully in Defendants' motion papers, there was no meeting of the minds as to several essential terms of the Contract.  Accordingly, no valid contract was ever formed. *Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 576 (2d Cir.1983) ("If there is no meeting of the minds on all essential terms, there is no contract. This is because an enforceable contract requires mutual assent to the essential terms and conditions thereof.")  Defendants have

established in their motion papers that there was no meeting of the minds with regard to whether Dell's had to provide Shoreline with shipping containers for the cherries (AM TI, pp. 188-189; AM TII, pp. 58-60), what constitutes an average of 10 loads per month (AM TII, pp. 47-48), or whether loads exported by Dell's were covered by the Contract (AM TII, pp. 111-112).

Even if this Court believes that a valid contract was formed, Dell's cannot establish that it performed its obligations pursuant to its terms.  Defendants have established that Dell's breached the Contract in several material instances.  In particular, Plaintiff failed to provide Shoreline with the necessary containers to ship cherries in brine to Dell's (AM TI, pp. 188-189; Defendants' Exhibit Q), Dell's refused to purchase cherries under the Contract unless Shoreline reduced the price (Defendants' Exhibits R and S), demands for additional price reductions were made by Dell's throughout the period covered by the Contract (Defendants' Exhibits R and S), Plaintiff took unauthorized deductions from payments owed to Shoreline for the sale of cherries in brine (Defendants' Exhibit T), and on at least two instances between September 1, 2009 and September 15, 2010, Dell's failed to make payment to Shoreline within the thirty-day payment terms and was over the $130,000.00 credit limit.  (AM TII, p. 313, ll. 8-11; DV TII, pp. 250-256 and 291-294; and Defendant's Exhibit U). Shoreline's failure to deliver 100 loads of cherries to Dell's was eminently excusable.  (See discussion *infra* at Section II.B.2.)

Critically, Dell's failed to take delivery of approximately ten loads per month as required by the Contract.  While Dell's has argued that it could take zero loads in the first eleven months of the Contract and 100 loads in the last month, thus satisfying the requirement of purchasing an "average" of ten loads per month, that position reads the word "average" right out of the Contract.  Such an interpretation is contrary to the prevailing cases which require that the Court give "weight and meaning to every express and implied provision of the contract." *Hebberd v.*

*American Sheet Metal Lath Co.*, 90 Misc. 350, 353 (App.Term., 1st Dept.1915); *see also*, *Laba v. Carey*, 29 N.Y.2d 302, 308 (1971) ("a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect") (internal citation and punctuation omitted).  Plaintiff's interpretation renders this an "as wanted" agreement, which it is not.  *Nostane Products Corp. v. Chas. L. Huisking & Co.*, 262 A.D. 754, 754 (2d Dept.1941). The parties went to the trouble of specifying "average" monthly loads, and that provision of the Contract, combined with the $130,000.00 credit limit, prohibits precisely the conduct Plaintiff wants this Court to believe is reasonable.

Finally, even if Dell's were able to set forth a *prima facie* case for breach of contract, its over-inflated demand for damages is unsustainable, since Dell's allegations that it purchased cover product from Bulgaria at a cost of $1.02 per pound is disproven by Dell's own documents and the deposition testimony of its president.  (AM TII, p. 233-239; Defendants' Exhibit V.) Therefore, Dell's is unable to carry its burden of presenting uncontroverted evidence to establish its breach of contract claim.

### i.      *Shoreline Did Not Waive Express Contract Provisions*

Dell's attempts to side-step Defendants' compelling evidence of Plaintiff's breach by arguing that its commercially unreasonable conduct is excusable because Shoreline waived any objections to those breaches.  However, it offers no case law to support this position and a review of the relevant cases demonstrates that Dell's position has no merit.

"To establish waiver under New York law one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it."  *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir.1983).  The record is filled with documents undermining any claim of waiver by Shoreline.

For example, Dell's argues that Shoreline waived the Contract's requirement that Dell's provide bins for packing cherries. However, Shoreline repeatedly demanded that Dell's supply bins. (Defendants' Exhibit BB). In any event, whether or not Shoreline waived any of the contract provisions may not be resolved on a motion for summary judgment. The law in New York is well-settled that a waiver "is rarely established as a matter of law rather than as a matter of fact," *Alsens Am. Portland Cement Works v. Degnon Contracting Co.*, 222 N.Y. 34 (1917), and any purported waiver "must be proved." *Id*. Dell's threadbare allegations of waiver, bereft of any compelling evidentiary support, do not excuse its material contractual breaches, much less entitle it to summary judgment.

Finally, even if this Court somehow believes that Shoreline waived certain Contract provisions, that waiver was retracted by reasonable notification from Shoreline that strict performance would be required in the future. NY UCC § 2-209(5); *see also*, *Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 184 (1982). Dean Veliquette's memorandum to Dell's on July 26, 2010 (Defendants' Exhibit R) specifically states that "Dell's should provide the containers as previously agreed," and that if Dell's so complies, that Shoreline can "ship up to 10 loads per month until September 4, 2010." Yet Dell's failed to comply, instead sending fifty-four purchase orders two weeks later without a single container. Accordingly, at the very least, any waiver by Shoreline of Dell's obligation to provide containers and to take approximately ten loads per month was retracted, rendering Dell's fifty-four purchase orders a nullity.

Notably, Dell's cannot argue that Shoreline was prevented from retracting any waiver on the ground that Dell's suffered a material change of position resulting from reliance on such a waiver. NY UCC § 2-209(5). At best, Dell's could merely point to its alleged deal with the Aldi

supermarket chain, but Arthur Mondella testified at his deposition that he never made Shoreline aware of the Aldi contract and no proof of the Aldi contract was ever turned over in discovery. (AM TI, p. 135, ll. 11-14.)  Accordingly, Dell's allegation that Shoreline waived any breaches by Dell's has no merit.

### ii.       The Contract Should Not Be Construed Against Shoreline

Dell's argument that the Contract should be construed against Shoreline on the ground of ambiguity is also without any merit.  Even if the Contract contains indefinite terms, since there is no merger clause, the Court should admit parol evidence or look at the course of dealing between the parties, not simply construe the Contract against the drafter.  When "a contract is ambiguous, the court may and should look to the prior negotiations of the parties to determine what was intended." *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Properties, LLC*, 467 F.3d 107, 126 (2d Cir.2006) (internal punctuation omitted).  Even the custom and practice of the industry, Restatement 2d of Contracts § 202, and the prior conduct of the parties may be considered by the court.  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 119 (2d Cir.2010) ("There is no surer way to find out the intent of the parties to a contract than to see what they have done.") (internal punctuation and citation omitted); *Point Developers, Inc. v. F.D.I.C.*, 921 F.Supp. 1014, 1020 (E.D.N.Y.1996) ("extrinsic evidence is admissible to supply the remaining terms of the parties' overall understanding.")

The cases relied on by Dell's do not require a different conclusion.   While it is generally accepted that an ambiguous contract ought to be construed against the drafter, the doctrine of "*contra preferentem* is used only as a matter of last resort, after all aids to construction have been employed but have failed to resolve the ambiguities in the written instrument." *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 n.2 (2d Cir.1983); *U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.*,

949 F.2d 569, 573 (2d Cir.1991).  Accordingly, the Contract can be interpreted through various other means, including by looking at the conduct of the parties or accepted industry practices.

Based on the prevailing cases, Shoreline cannot be deemed to have breached the Contract because questions exist as to whether a contract was ever formed, and because Dell's did not comply with its obligations under the agreement.  Dell's attempts to excuse its breaches by arguing waiver or *contra preferentum* are not properly raised on a motion for summary judgment, and are without merit.

2.      Shoreline Had a Right to Cancel the Contract

Even if this Court does not believe that Dell's sharp business practices constitute a *prima facie* breach of the Contract by Plaintiff, there can be no reasonable dispute that Dell's conduct excused Shoreline from performance.

i.      *Breach of Installment Contract*

There is no dispute that the Contract constitutes an installment contract as defined in NY UCC § 2-612. However, Plaintiff's argument that there was no "substantial impairment" of the Contract which would justify Shoreline declaring Dell's in breach of the entire Contract lacks merit.  The accompanying affidavit of Dean Veliquette establishes that Dell's president told Shoreline in April, 2010 that it would only take delivery of an additional thirty-five loads under the Contract.  Since this would have resulted in sixty-six loads being delivered to Dell's under the Contract, that leaves a shortfall of thirty-four loads worth approximately $850,000.00.  That's an impairment of not one installment, but thirty-four.  Such a dramatic difference between the anticipated value of the Contract and its actual value is a substantial impairment under any reasonable interpretation of that doctrine.

This conclusion is supported by *Mercer Tube & Mfg. Co. v. Am. Zinc Sales Co.*, 258 A.D. 506 (1st Dept.1940) *aff'd*, 284 N.Y. 636 (1940), which concerned installment contracts for the sale of zinc. When the purchaser first deferred delivery of certain installments, then at the end of the contract period precipitously demanded delivery of the majority of the product, the court held that the purchaser had no "no right to insist on delivery of 1,650 tons in August under the contracts," *id*. at 508, and that the seller "was under no obligation to deliver 1,650 tons in August as demanded." *id*. In light of Dell's having substantially impaired the Contract, Shoreline was justified in refusing to deliver any more than thirty-five loads to Dell's after the April 1, 2010 conversation.[1]

Furthermore, Dell's refusal to supply shipping containers also constitutes a substantial impairment of the Contract. Dell's belated fifty-four purchase orders in August would have required 1,350 bins. At no time did Dell's provide Shoreline with more than 112 bins. (Defendants' Exhibit Q.) Even if Shoreline had the additional 1,238 bins necessary to fulfill those orders, which it did not, satisfying Plaintiff's huge order, for which no advance warning had been given, would have caused the balance of Shoreline's business to grind to a halt. Accordingly, Dell's failure to provide bins also constitutes a substantial impairment of the Contract justifying Shoreline's refusal to deliver additional loads to Dell's.

The cases relied upon by Dell's support this position. For example, in *Petroleo Brasileiro S.A., Petrobras v. IBE Group, Inc.*, 1995 WL 326502 (S.D.N.Y., May 31, 1995) (93-cv-3305), the alleged substantial impairment was late payment of no more than eighteen days, and limited interest charges. These do not remotely compare to the substantial impairment

---

[1] Admittedly, Dell's disputes the sum and substance of the April 1, 2012 conversation. Even if the Court credits Mondella's unsworn declaration concerning that conversation, the appropriate result is referring the dispute to the jury, not awarding Plaintiff summary judgment.

described above.  Based on the foregoing, Dell's conduct caused a substantial impairment to the Contract, both in its anticipated value to Shoreline and the overwhelming impact on Shoreline's business were it required to attempt to fulfill fifty-four purchase orders in three weeks, something that was probably impossible.  Accordingly, Shoreline was justified in refusing to deliver additional loads to Dell's.

### ii.        *Impracticability of Performance*

Even if this Court concludes that there was no substantial impairment to the Contract, Shoreline was excused from performance because Shoreline was prevented from fulfilling the Contract by Dell's conduct.  Pursuant to NY UCC § 2-615, a seller's non-delivery of goods, in whole or in part, does not constitute a breach "if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made."  *Id*.  A seller's performance in such circumstances may be excused if it timely notified its customers of the possibility of non-delivery, *Cliffstar Corp. v. Riverbend Products, Inc.*, 750 F. Supp. 81 (W.D.N.Y.1990).  If delivery of a portion of the product is possible, the seller must employ "a fair and reasonable allocation system among its customers if there is less product than the customers would like to have." *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 2002 WL 413808 at *39  (S.D.N.Y. Mar. 18, 2002) (98-cv-5566).  The April 1, 2010 conversation between Veliquette and Mondella, and Shoreline's subsequent tender of at least thirty-four loads to Dell's, proves that Shoreline's conduct was permissible under the UCC.

Similarly, Shoreline was excused from any obligation to satisfy Dell's fifty-four purchase orders in the last twenty-four days of the Contract period because Dell's knew, based on the parties' prior course of dealings, that Shoreline, a small farmers' cooperative, did not have the

capacity to fulfill so many orders in such a short period of time.  Dell's demands would have overwhelmed Shoreline's limited storage and processing capacity, and prevented Shoreline from fulfilling its obligations under the Contract.  *Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co.*, 79 N.Y.2d 801, 803 (1991) ("in every contract there is an implied undertaking on the part of each party that it will not do anything to prevent the other party from carrying out the agreement on its part") (internal citation and punctuation omitted).  In any event, the fifty-four last minute orders, if fulfilled, would have put Plaintiff hundreds of thousands of dollars over its contractual $130,000.00 credit limit.  Standing alone, that excuses any obligation Shoreline might have had to fulfill the orders.  It bears repeating that spacing of shipments over time was of the essence, and that the parties specified that the 100 loads of cherries covered by the Contract would be made available in increments of approximately ten per month for very good reasons.

The legitimacy of Shoreline being excused from performance is also supported at common law, where as here, the Contract specifically calls for an "average" of ten loads per month.  In a longstanding New York case where a similar contract required the purchaser to take delivery of goods in "fairly equal monthly quantities," and the purchaser failed to call for the delivery of loads due in a particular month, the purchaser was denied judgment against the seller who refused to deliver loads at the end of the contract period at a rate greater than that contemplated by the agreement.  *Columbia Wax Products Co. v. Indian Ref. Co.*, 184 A.D. 250 (1st Dept.1918).  Any other outcome would have rendered performance by the seller commercially unreasonable.

Notably Dell's asks the Court to reject this defense on the ground that it "fails as a matter of law," but it offers no case or statute to support this assertion.  Accordingly, the defense must be preserved, and Dell's motion denied.

### C.      Shoreline's Conduct Does Not Violate Section 2 of the PACA

As set forth more fully in Defendants' papers in support of their motion for summary judgment, Dell's is attempting to use Section 2 of the PACA, 7 U.S.C. § 499b, in a manner contrary to its legislative intent.  That portion of the PACA was "passed primarily to eliminate unfair practices in the marketing of perishable agricultural commodities in interstate commerce in the case of a declining market by making it difficult for unscrupulous persons to take advantage of shippers by wrongful rejection of the goods." *Joseph Martinelli & Co. v. Simon Siegel Co.*, 176 F.2d 98, 100 (1st Cir.1949).  Congress sought to prevent a purchaser like Dell's from being able to reject contracted-for goods when the market price falls below what a buyer has agreed to pay – such conduct would create an undue burden for the seller.  Dell's engaged in the contrapositive of the proscribed conduct, which is also contrary to the legislative intent of the statute – it demanded to purchase goods which it forfeited when the market price rose above what the buyer had agreed to pay.  Again, the seller is being subjected to an undue burden, and Plaintiff's conduct must be prohibited.  At the very least, Dell's cannot be deemed to be entitled to relief under Section 2.

Even if that were not the case, Dell's was not aggrieved by Shoreline's conduct as contemplated in Section 2, which only prohibits a dealer from "fail[ing] to <u>deliver</u>," (emphasis added) because Shoreline was not obligated to "deliver" any loads to Dell's.  Dell's alleges that Shoreline has liability under the statute because it "refused to deliver cherries to Dell's in accordance with the parties' Contract."  Dell's Memorandum in Support at p. 17.  However,

Dell's has repeatedly admitted that Shoreline "did not ship the loads.  SFG made them available for pickup."  (Defendants' Exhibit O at ¶¶ 16-26.)  Accordingly, Shoreline cannot be deemed to have "failed to deliver" any loads to Dell's as required by Section 2.

In addition, Shoreline has established that it had up to ten loads of cherries available for Dell's to pick up, and that it had tendered the vast majority of these loads to Dell's. Accordingly, Dell's can make no showing that Shoreline's conduct was contrary to the intent of the statute because Dell's could have picked up those loads at any time, but refused to do so. Indeed, Dell's meager submission on this point suggests that Plaintiff is aware of the deficiencies in this claim.  Based on the foregoing, Dell's cause of action under the PACA has no merit and its motion for summary judgment on that claim must be denied.

### D.        Shoreline Is Entitled to Relief On Its Counterclaims

Even if the Court does not agree that Shoreline is entitled to relief on its counterclaims prior to trial, those claims should not be dismissed.  As set forth more fully in Defendants' motion papers, Shoreline is entitled to recover the sum of $32,259.00 arising out of Dell's failure to provide bins, Dell's taking unauthorized deductions from remittances it made to Shoreline, and storage costs incurred by Shoreline arising out of Dell's refusal to take delivery of loads tendered.  In addition, Shoreline is entitled to relief under Section 2 of the PACA on the ground that Dell's rejected without justification loads Shoreline had tendered to Dell's in the usual course of business.  Shoreline is also entitled to recover attorneys' fees and interest on these damages as contemplated by its invoices to Dell's and the PACA.

Dell's allegation that Shoreline consented to Dell's unauthorized deductions has no merit. Shoreline has established that the price reductions from $0.49 to $0.48 and $0.47 per pound were predicated on Dell's paying return freight charges.  (Defendants' Exhibit CC.)  Dell's does not

deny this, nor does it allege that it paid those fees. In light of its failure to comply with the terms of the modification, no modification was validly formed.

Similarly perplexing is Dell's allegation that Shoreline never invoiced Dell's for the difference. That assertion is simply incorrect because such an invoice was sent to Dell's on August 12, 2010. (Defendants' Exhibit Y.) Notably, that invoice includes the statutory language required for Shoreline to preserve its PACA trust rights pursuant to 7 U.S.C. § 499e(c)(4) and provides for the recovery of interest and attorneys fees necessary to collect any unpaid balance. Accordingly, Shoreline's counterclaims have merit and must not be dismissed.

### III.   CONCLUSION

For all of the foregoing reasons, Defendants are entitled to the entry of an order denying Dell's motion for partial summary judgment, and awarding Defendants costs and expenses together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 27, 2012

                          Respectfully submitted,
                          Law Offices of Bruce Levinson
                          Attorneys for Defendants

By:                 _____
                          Gregory Brown
                          747 Third Avenue, Fourth Floor
                          New York, New York 10017-2803
                          (212) 750-9898